2009 WY 113

CBM GEOSOLUTIONS, INC., a Wyoming corporation; Bret Noecker; and Brian Lareau, Appellants (Defendants),

v.

GAS SENSING TECHNOLOGY CORP., a Wyoming corporation, Appellee (Plaintiff).

No. S–08–0214.

Supreme Court of Wyoming.

Sept. 14, 2009.

Representing Appellants: Peggy A. Trent of Trent Law Office, LLC, Laramie, Wyoming.

Representing Appellee: Philip A. Nicholas and Jason M. Tangeman of Anthony, Nicholas & Tangeman, LLC, Laramie, Wyoming. Argument by Mr. Tangeman.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1]   Appellants, CBM Geosolutions, Inc. (CBM), Bret Noecker, and Brian LaReau, request relief from a preliminary injunction granted by the district court to Appellee, Gas Sensing Technology Corp. (GST), during an underlying lawsuit to enforce non-compete and non-disclosure agreements between the parties. Finding correct application of the law, and no abuse of discretion, we affirm.

## ISSUES

[¶ 2]   1.   Did the district court apply the correct legal standard in considering the request for a preliminary injunction?

2.   Did the district court abuse its discretion when it issued a preliminary injunction pending trial on the merits in this action?

## FACTS

[¶ 3]   Appellants Bret Noecker and Brian LaReau were employed by WellDog Inc., a company engaged in the business of measuring coal bed methane gas.   Noecker began his employment with WellDog on or about January 9, 2003, at which time he signed a document entitled Employee Non–Compete Agreement.   LaReau began his employment on or about August 31, 2004, and also signed an Employee Non–Compete Agreement. The wording of the non-compete agreements is identical and reads as follows:

For good consideration and as an inducement for WellDog Inc. (Company) to employ [Appellant] (Employee), the undersigned Employee hereby agrees not to directly or indirectly compete with the business of the Company and its successors and assigns during the period of employment and for a period of three (3) years following termination of employment and notwithstanding the cause or reason for termination.

The term "not compete" as used herein shall mean that the Employee shall not own, manage, operate, consult or to be employed in a business substantially similar to, or competitive with, the present business of the Company or such other business activity in which the Company may substantially engage during the term of employment.

The Employee acknowledges that the Company shall or may in reliance of this agreement provide Employee access to trade secrets, customers and other confidential data and good will.   Employee agrees to retain said information as confidential and not to use said information on his or her own behalf or disclose same to any third party.

This non-compete agreement shall be in full force and effect for three (3) years, commencing with the date of employment termination.

This agreement shall be binding upon and inure to the benefit of the parties, their successors, assigns, and personal representatives.

[¶ 4]   Appellant Noecker left WellDog in March of 2004, but returned to work for the company in August of that same year. Noecker testified that he did not believe he signed another non-compete when he returned, however, he testified that he understood at the time of his reemployment that he was still bound by the non-compete agreement.   John Pope, who supervised Appellants at WellDog, testified that it was standard procedure for every employee to sign a non-compete agreement.   Noecker left Well-Dog in February of 2007.   LaReau also left WellDog in 2007.   Appellee GST purchased all WellDog's principal operating assets, including employee non-compete agreements, in November of 2007.   The list of assets sold to GST included both of the original non-compete agreements as well as a non-compete agreement signed by Noecker on August 16, 2004.   However, at the hearing, GST was unable to produce any non-compete agreement signed by Noecker during his second term of employment.

[¶ 5]   In August of 2007, Noecker and La-Reau formed CBM, which is also in the business of measuring coal bed methane levels. GST sued Noecker, LaReau, and CBM on May 7, 2008, and requested, *inter alia*, enforcement of the non-compete and other agreements regarding proprietary information, technologies, and customer lists that GST purchased from WellDog.   On June 9, 2008, GST filed an Application for Temporary Restraining Order and requested that Appellants be enjoined from violating the terms of the non-compete and other agreements during the pending litigation.   The district court set a date for a hearing on GST's request for a preliminary injunction and granted GST a temporary restraining order until that date.   On July 8, 2008, after a hearing, the district court entered its Findings of Fact, Conclusions of Law and Order

on Plaintiffs' Application for Temporary Restraining Order and Preliminary Injunction (Findings of Fact), granting GST's motion for a preliminary injunction against Appellants, pending a trial on the merits to resolve the question of a permanent injunction. This appeal followed.

## DISCUSSION

*1. Did the district court apply the correct legal standard in considering the request for a preliminary injunction?*

▮ [¶ 6] We review the question of whether the district court applied the proper legal standard *de novo. Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 538 (Wyo. 1993). Wyo. Stat. Ann. § 1–28–102 (Lexis-Nexis 2009) states:

When it appears by the petition that the plaintiff is entitled to relief consisting of restraining the commission or continuance of some act the commission or continuance of which during the litigation would produce great or irreparable injury to the plaintiff, or when during the litigation it appears that the defendant is doing, threatens to do, or is procuring to be done some act in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, a temporary order may be granted restraining the act. The order may also be granted in any case where it is specially authorized by statute and by municipal ordinance adopted pursuant to W.S. 15–1–103(a)(xlvi).

▮ [¶ 7] With respect to temporary injunctions granted during the pendency of a litigation, we have said:

The purpose of a temporary injunction is to preserve the status quo until the merits of an action can be determined. And a temporary injunction rests upon an alleged existence of an emergency, or a special reason for such an order, before the case can be regularly heard.

Also, the award of a temporary injunction is an extraordinary remedy which will not be granted except upon a clear showing of probable success and possible irreparable injury to the plaintiff, lest the prop-

er freedom of action of the defendant be circumscribed when no wrong has been committed.

*Weiss v. State ex rel. Danigan,* 434 P.2d 761, 762 (Wyo.1967) (citations omitted).

In granting temporary relief by interlocutory injunction courts of equity do not generally anticipate the ultimate determination of the questions of right involved. They merely recognize that a sufficient case has been made out to warrant the preservation of the property or rights in issue *in statu quo* until a hearing upon the merits, without expressing, and indeed without having the means of forming a final opinion as to such rights.

*Stowe v. Powers,* 19 Wyo. 291, 116 P. 576, 581 (1911) (citation and quotation marks omitted).

▮ [¶ 8] Appellants argue that the district court applied a federal standard not used in Wyoming when it required some showing of likelihood of success on the merits before it granted the preliminary injunction. The Tenth Circuit in *Greater Yellowstone Coalition v. Flowers,* 321 F.3d 1250, 1255 (10th Cir.2003) stated that

[a] party seeking a preliminary injunction bears the burden of showing: (1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) [that] the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) [that] the injunction, if issued, will not adversely affect the public interest.

(Citation and quotation marks omitted.)

Appellants contend that the district court used this standard, instead of Wyoming law, in reaching its conclusion. This is simply incorrect. The district court found that "there is a substantial likelihood that GST will prevail substantially on the merits[.]" However, the district court did not mention the federal standard or quote any federal precedent in its Findings of Fact. In addition, a review of the standard set forth above as described in *Weiss v. State ex rel. Danigan* makes it clear that likelihood of success on the merits is a factor that a district court

must consider before granting a preliminary injunction under Wyoming law. *Weiss*, 434 P.2d at 762. The district court properly applied Wyoming law.

■ [¶ 9] Appellants also contend that the district court improperly based its decision on the fact that the contracts signed by Appellants provide for injunctive relief. Appellants claim that the court ordered the injunction as a matter of contract, and therefore did not exercise its equitable powers in issuing the injunction. The district court did make a finding of fact that the non-compete agreements specifically authorize injunctive relief, however, it did so in the context of analyzing the facts under the proper standard for injunctive relief. It is proper for a court acting in equity to consider the remedies contemplated by the parties in reaching its conclusion on the equities. *See, e.g., Dewey v. Wentland*, 2002 WY 2, ¶¶ 35–42, 38 P.3d 402, 416–17 (Wyo.2002). The district court did not erroneously award an injunction pursuant to contract but properly applied the equitable standards for granting an injunction.

■ [¶ 10] Appellants next claim that the district court's findings of fact are inadequate as a matter of law because the court did not make a finding that there was no adequate remedy available at law.

> Although actions for injunctive relief are authorized by statute, Wyo. Stat. §§ 1–28–101 to –111 (1988 & Supp.1996), they are, by nature, requests for equitable relief which are not granted as a matter of right but are within the lower court's discretion. *Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.*, 714 P.2d 328, 332 (Wyo. 1986). Injunctions are issued when the harm is irreparable and no adequate remedy at law exists. *Id.; Gregory v. Sanders*, 635 P.2d 795, 801 (Wyo.1981). Injunctive relief is appropriate when an award of money damages cannot provide adequate compensation. *Rialto Theatre, Inc.*, 714 P.2d at 332. An injury is irreparable where it is of a peculiar nature, so that compensation in money cannot atone for it. *Gause v. Perkins*, 56 N.C. 177 (1857).

*Weiss v. Pedersen*, 933 P.2d 495, 498–99 (Wyo.1997) (quotation marks omitted), *overruled in part on other grounds by White v. Allen*, 2003 WY 39, 65 P.3d 395, 399 (Wyo. 2003).

The district court found, "GST will suffer immediate, great, and irreparable harm and damage in the event that Defendants Noecker and LaReau and their company, CBM GeoSolutions, are allowed to compete with GST in violation of the covenants-not-to-compete between Noecker and LaReau and WellDog that were purchased by GST." Underlying that conclusion were findings that Appellants had been trained by WellDog in the innovative technology now used by GST to provide services to its customers. GST's representative testified that the innovative technology used by the company is essential to its competitive edge in the marketplace and that only a few companies provide similar services in the market. He further testified that some of the services offered by Appellants involved disclosing information on the process to customers, which would cause permanent loss of those customers because they would no longer require the services of a company like GST. The district court found that this would constitute irreparable harm. Irreparable harm is, by definition, harm for which there can be no adequate remedy at law. The district court's findings were not insufficient as a matter of law.

## 2. Did the district court abuse its discretion when it issued a preliminary injunction pending trial on the merits in this action?

■ [¶ 11] The granting or refusing of an injunction *pendente lite* is a matter resting largely in the discretion of the court, to be exercised so as to prevent injury, considering the situation of the parties. And the Appellate Court will not interfere with or control the action of the court below in such case, unless it has been guilty of a clear abuse of discretion.

*Weaver v. Richardson*, 21 Wyo. 343, 132 P. 1148, 1151 (1913).

[¶ 12] Appellants argued that the district court abused its discretion in issuing the injunction because enforcement of the non-compete agreement was barred by the stat-

ute of frauds. The district court found that because Noecker admitted that he believed he was bound by the first non-compete when he returned to WellDog, he was estopped from invoking the statute of frauds as a defense. This idea has support in Wyoming law. In *Kincheloe v. Milatzo*, 678 P.2d 855, 860 (Wyo.1984), we said that equitable doctrines could be used to prevent a party from invoking the statute of frauds to perpetuate a fraud. It is not necessary for us to decide whether such a concept could be relevant here because there was enough evidence of the existence of a written contract to allow the district court to issue an injunction pending discovery and trial. Noecker testified that he did not remember signing a new non-compete when he returned to the company in 2004. However, GST's representative testified that the company was very careful about observing its standard operating procedure of having all employees sign non-compete agreements. A written covenant not to compete dated August 16, 2004, is listed on the asset purchase agreement between WellDog and GST. Other documents that would have been signed in conjunction with the non-compete were produced at the hearing. Given the amount of evidence presented at the hearing indicating the existence of a written non-compete agreement, we cannot say that the district court abused its discretion when it ordered an injunction pending further discovery and trial.

[¶ 13] Appellants finally argue that a preliminary injunction was not appropriate because the non-compete agreements are unenforceable as a matter of law. Appellants point out that the reasonableness of a covenant not to compete is a question of law to be determined by the court and reviewed *de novo*. *Hopper*, 861 P.2d at 542–43. However, that determination will necessarily depend on facts that must be developed in due course at the appropriate stage of litigation. The district court found, based on the limited review required for a preliminary injunction, that the covenants were likely to be enforced. The district court stated

6. A valid and enforceable covenant not to compete requires a showing that the covenant is: (1) in writing; (2) part of a contract of employment; (3) based on rea-

sonable consideration; (4) reasonable in durational and geographical limitations; and (5) not against public policy. *See, e.g., Tench v. Weaver*, 374 P.2d 27, 29 (Wyo. 1962); *Ridley v. Krout*, [63 Wyo. 252,] 180 P.2d 124, 128 (Wyo.1947); *Dutch Maid Bakeries v. Schleicher*, [58 Wyo. 374,] 131 P.2d 630, 634 (Wyo.1942); Wyo. Stat. Ann. § 1–23–105 (1988). Further, the Wyoming Supreme Court has recognized the rule that a covenant not to compete entered into contemporaneously with the employment itself is enforceable and is supported by sufficient consideration. *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 540 (Wyo.1993).

7. The reasonableness of a covenant not to compete is assessed upon the facts of the particular case and a review of all of the circumstances. *See, e.g., Hopper*, 861 P.2d at 540. In evaluating reasonableness, a court may consider the degree of inequality in bargaining power; the risk of the covenantee losing customers; the extent of respective participation by the parties in securing and retaining customers; the good faith of the covenantee; the existence of sources or general knowledge pertaining to the identity of customers; the nature and extent of the business position held by the covenantor; the covenantor's training, health, education, and needs of his family; the current conditions of employment; the necessity of the covenantor changing his calling or residence; and the correspondence of the restraint with the need for protecting the legitimate interests of the covenantee. *See, e.g., Hopper*, 861 P.2d at 540.

The district court found that there was evidence that a covenant not to compete existed in writing, that the document was signed ancillary to a legitimate employment relationship that constituted reasonable consideration, and that GST had presented evidence that could lead the court to conclude that a restriction that was national in nature but narrowly tailored to one aspect of the industry was reasonable under the circumstances. If any part of a covenant not to compete is found unreasonable and therefore unenforceable, the court may decline to enforce the unreasonable provisions. *Hopper*, 861 P.2d at 545–47. None of the terms of the non-

compete agreement in this case were facially unreasonable and the court did not abuse its discretion when it found, based on the evidence before it at the hearing, that Appellee was entitled to an injunction pending full development of the facts and determination on the merits. We note that these findings do not constitute a determination on the merits, but are preliminary findings in the context of the limited evidence presented at the hearing for a preliminary injunction.

## CONCLUSION

[¶ 14] We find that the district court correctly applied the law and did not abuse its discretion when it issued a preliminary injunction prohibiting Appellants from competing with their former employer during the pending litigation to enforce a covenant not to compete.