# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 83

APRIL TERM, A.D. 2021

July 15, 2021

JENNIFER BROWN f/k/a JENNIFER
STRINGER, NORA YOUNGREN and
CAROL WOLFE,

Appellants
(Defendants),

v.                                                     S-20-0270

BEST HOME HEALTH & HOSPICE,
LLC, a Wyoming limited liability
company,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
The Honorable Joseph B. Bluemel, Judge

*Representing Appellants:*
    Clark Stith, Rock Springs, Wyoming.

*Representing Appellee:*
    Sarah E. Tollison, DeFazio Law Office, LLC, Jackson, Wyoming.

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*\* Chief Justice at time of oral argument.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     Jennifer Brown (f/k/a Jennifer Stringer), Nora Youngren, and Carol Wolfe (collectively referred to as the Nurses) are registered nurses who worked for Best Home Health & Hospice, LLC (Best Home).  After they left Best Home's employ and began working for a competing company, Best Home sued them for breach of the non-compete provision in their employment contracts and requested a preliminary injunction to prohibit them from working for its competitors.  After refusing to allow the Nurses to present evidence on how enforcement of the non-compete provision would harm the public interest, the district court granted Best Home a preliminary injunction.  We reverse and remand.

## ISSUES

[¶2]     The issues[1] in this case are:

1.     Did the district court abuse its discretion by enjoining the Nurses from working for Best Home's competitors?

2.     Did the district court abuse its discretion by refusing to allow the Nurses to present evidence the public would be injured by enforcing the non-compete provision?

## FACTS

[¶3]     Best Home provides home health care to clients in Unita County, Wyoming.  In 2016, Best Home started requiring its employees to sign a written employment agreement (the Agreement).  The Agreement stated employees were "at-will" and Best Home had the "right to hire or fire" them in its "sole discretion."  The Agreement also contained a non-compete provision imposing "restrictions on post-employment activities" "to protect [Best Home], its employees and its customers against former employees using company information, ideas, contacts or relationships against it."   The provision prohibited employees from "directly or indirectly" competing with Best Home by providing home health care services "similar to or which could be substituted for [its] services."  The non-compete provision was effective for 24 months after termination of employment and applied "in an area covering in all directions 50 (fifty) miles from the office or locations" where the employees worked for Best Home.  The Agreement required employees to

---

[1] The Nurses' statement of the issues is somewhat different.  We have rephrased the issues to better reflect their appellate argument.  The Nurses also raise an issue regarding the injunction's duration.  Our ruling on the other issues makes it unnecessary to consider the duration issue.

handle company information in a confidential manner and prohibited them from soliciting Best Home's employees to work for its competitors or Best Home's clients to use a competing company for their home health needs. In the event a former employee violated the Agreement, Best Home was authorized to seek injunctive relief to enforce it.

[¶4]    Ms. Youngren and Ms. Brown were already employed by Best Home when they signed the Agreement on June 1 and June 8, 2016, respectively. Ms. Wolfe signed the Agreement at the time of her hire in 2017.[2] Ms. Wolfe quit working for Best Home in October 2018, Ms. Brown left in December 2018 or January 2019, and Ms. Youngren followed in January 2020. The Nurses went to work for Uinta Home Health, one of Best Home's competitors.

[¶5]    Best Home filed a complaint asserting the Nurses violated the Agreement and petitioned the district court for a preliminary injunction to prohibit them from working for its competitors during the pendency of the litigation. The Nurses opposed the preliminary injunction, arguing the non-compete provision of the Agreement was unenforceable. The district court ruled the provision was "valid and enforceable" and enjoined the Nurses from working for Best Home's competitors.[3] The Nurses appealed. We will provide additional facts as necessary for discussion of the issues.

## STANDARD OF REVIEW

[¶6]    Injunctive relief is authorized by statute. Wyo. Stat. Ann. §§ 1-28-101 through 111 (LexisNexis 2021). Section 1-28-101 defines an injunction as "a command to refrain from a particular act." Section 1-28-102 sets out the general standard for injunctions:

> When it appears by the petition that the plaintiff is entitled to relief consisting of restraining the commission or continuance of some act the commission or continuance of which during the litigation would produce great or irreparable injury to the plaintiff, or when during the litigation it appears that the defendant is doing, threatens to do, or is procuring to be done some act in violation of the plaintiff's rights respecting the subject of the action and tending to render the judgment ineffectual, a temporary order may be granted restraining the act.

---

[2] Ms. Wolfe had been associated with Best Home on two previous occasions. She founded the Best Home business in 2004 and sold it in 2009 or 2010. She later worked for Best Home as an employee from 2014 to 2016.

[3] Best Home also obtained injunctive relief to enforce the non-solicitation and confidentiality provisions of the Agreement. There is no argument on appeal specifically addressing those aspects of the district court's decision.

[¶7]	The purpose of a preliminary injunction during the pendency of litigation is "'to preserve the status quo until the merits of an action can be determined.'" *CBM Geosolutions, Inc. v. Gas Sensing Tech. Corp.,* 2009 WY 113, ¶ 7, 215 P.3d 1054, 1057 (Wyo. 2009) (quoting *Weiss v. State ex rel. Danigan,* 434 P.2d 761, 762 (Wyo. 1967)). "'[A] [preliminary] injunction⁴ rests upon an alleged existence of an emergency, or a special reason for such an order, before the case can be regularly heard.'" *Id.* (footnote added). "'[T]he award of a [preliminary] injunction is an extraordinary remedy which will not be granted except upon a clear showing of probable success [on the merits of the suit] and possible irreparable injury to the plaintiff, lest the proper freedom of action of the defendant be circumscribed when no wrong has been committed.'" *Id.* "An injury is irreparable where it is of a peculiar nature, so that compensation in money cannot atone for it." *Polo Ranch Co. v. City of Cheyenne,* 2003 WY 15, ¶ 26, 61 P.3d 1255, 1264 (Wyo. 2003) (citations and internal quotation marks omitted). *See also, Dunmire v. Powell Family of Yakima, LLC (In re Kite Ranch, LLC),* 2008 WY 39, ¶ 22, 181 P.3d 920, 926 (Wyo. 2008) (harm is irreparable when there is no adequate remedy at law to compensate for it).

¶8]	Even though injunctions are statutorily authorized, they are, by nature, discretionary requests for equitable relief. *CBM Geosolutions,* ¶ 10, 215 P.3d at 1058 (citing *Weiss v. Pedersen,* 933 P.3d 495, 498-99 (Wyo. 1997)). We do not interfere with the district court's preliminary injunction decision "unless it has been guilty of a clear abuse of discretion." *Id.,* ¶ 11, 215 P.3d at 1058 (citing *Weaver v. Richardson,* 21 Wyo. 343, 132 P. 1148, 1151 (1913)). A court abuses its discretion when it "acts in a manner which exceeds the bounds of reason under the circumstances." *Lemus v. Martinez,* 2021 WY 66, ¶ 32, 486 P.3d 1000, 1011 (Wyo. 2021) (citation omitted). *See also, Kidd v. Jacobson,* 2020 WY 64, ¶ 13, 463 P.3d 795, 798 (Wyo. 2020).

[¶9]	When a district court's preliminary injunction order is appealed, we review its factual findings for clear error and its conclusions of law de novo. *See Hart v. Nat'l Collegiate Athletic Ass'n,* 550 S.E.2d 79, 83 (W.Va. 2001). *See also, Anita G, LLC v. Centennial Bank,* 575 S.W.3d 561, 567 (Ark. Ct. App. 2019) (the trial court's factual findings from a preliminary injunction proceeding will not be set aside unless they are clearly erroneous); 36 C.J.S. Fed.Cts. § 616 (2021) (a district court's factual determinations made in determining whether to issue a preliminary injunction are reviewed for clear error). *C.f. Weaver,* 132 P. at 1151 (a preliminary injunction will not be reversed absent

---

⁴*CBM* uses the terms "temporary injunction" and "preliminary injunction" interchangeably. *CBM Geosolutions,* ¶¶ 6-7, 215 P.3d at 1057. However, *CBM* is not referring to an ex parte temporary restraining order (TRO). Although some of the substantive requirements for granting a TRO and preliminary injunction are the same, there are different procedural requirements. W.R.C.P. 65(a) and (b). *See also, Operation Save Am. v. City of Jackson,* 2012 WY 51, ¶¶ 87-96, 275 P.3d 438, 463-65 (Wyo. 2012) (discussing the notice requirement for a TRO).

an abuse of discretion showing the district court disregarded the facts or made an error of law). "[A] finding of fact is clearly erroneous . . . when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Pagel v. Franscell,* 2002 WY 169, ¶ 7, 57 P.3d 1226, 1229 (Wyo. 2002) (citations and quotation marks omitted). In reviewing a district court's factual findings for clear error, we review the evidence in the light most favorable to the prevailing party. *Wyo-Ben, Inc. v. Van Fleet,* 2015 WY 146, ¶¶ 20, 31, 361 P.3d 852, 858, 861 (Wyo. 2015).

## DISCUSSION

### 1. Preliminary Injunction to Enforce the Non-Compete Provision

[¶10] The district court ruled Best Home was entitled to a preliminary injunction to prohibit the Nurses from violating the non-compete provision of the Agreement. "Two principles, the freedom to contract and the freedom to work, conflict when courts test the enforceability of covenants not to compete." *Hopper v. All Pet Animal Clinic, Inc.,* 861 P.2d 531, 539 (Wyo. 1993). Over half a century ago, we stated "sound public policy encourages employees to seek better jobs from other employers or to go into business for themselves." *Ridley v. Krout,* 63 Wyo. 252, 180 P.2d 124, 127 (1947) (citations and quotation marks omitted). Contracts which hinder them from doing so are "strictly construed and rigidly scanned and are declared void unless necessary for the reasonable protection of the employer." *Id.* (citations and quotation marks omitted). *See also, Hopper,* 861 P.2d at 539 (a non-compete agreement restrains trade, and the common law policy against contracts in restraint of trade is firmly established (citing Restatement (Second) of Contracts §§ 185-188 (1981) (Introductory Note at 35) and *Dutch Maid Bakeries v. Schleicher,* 58 Wyo. 374, 131 P.2d 630, 634 (1942))). A non-compete provision "is prima facie invalid, and . . . to establish its validity it is incumbent on the [employer] to prove that there existed some special circumstances which rendered it reasonably necessary for the protection of the [employer's] business." *Ridley,* 180 P.2d at 129 (citation and some quotation marks omitted). An agreement not to compete is valid and enforceable only if it is: "(1) in writing; (2) part of a contract of employment; (3) based on reasonable consideration; (4) reasonable in duration and geographical limitations; and (5) not against public policy." *Hopper,* 861 P.2d at 540.

#### a. Consideration

[¶11] The non-compete provision in this case was contained in a written employment agreement signed by the Nurses, satisfying the first two elements of the *Hopper* test. Addressing the third *Hopper* element, the district court ruled "the non-compete covenants . . . before this [c]ourt are . . . based on reasonable and additional consideration." The

Nurses contest that ruling, asserting Best Home made an insufficient showing of consideration.

[¶12] The district court's ruling is phrased as a final conclusion that the non-compete provisions are supported by consideration. It should not have been. When ruling on a request for a preliminary injunction, the court does not make a final decision on the merits; it considers whether the petitioner has clearly shown it is likely to succeed in proving its claim. *CBM Geosolutions,* ¶ 7, 215 P.3d at 1057 (citing *Stowe v. Powers,* 19 Wyo. 291, 116 P. 576, 581 (1911)). The district court's ruling suggests it, and perhaps the parties, treated the determination as a trial, rather than a preliminary, ruling. While Wyoming Rule of Civil Procedure (W.R.C.P.) 65(a)(2) allows consolidation of the preliminary injunction hearing with a trial on the merits, the district court did not do so in this case. In fact, the parties and the court discussed the trial setting after the court announced its preliminary injunction ruling. The parties may present additional evidence at the trial on the merits, and the fact finder will make a final determination concerning the enforceability of the Nurses' agreements not to compete with Best Home. *See CBM Geosolutions,* ¶ 13, 215 P.3d at 1059-60 (a final determination of the validity of a non-compete agreement does not occur at the preliminary injunction stage).

[¶13] Our task is to determine whether the district court could have concluded Best Home is likely to succeed in proving it gave consideration for the Nurses' agreements not to compete. For an agreement to be supported by consideration, there must have been an *exchange* of value between the parties.

> "A generally accepted definition of consideration is that a legal detriment has been bargained for and exchanged for a promise." *Moorcroft State Bank v. Morel*, 701 P.2d 1159, 1161-62 (Wyo. 1985). A sufficient legal detriment is the promise or performance of "any act, regardless of how slight or inconvenient, which [the promisee] is not obligated to promise or perform so long as it does so at the request of the promisor and in exchange for the promise." 3 Williston on Contracts § 7:4 (4th ed.), Westlaw (database updated November 2018). "By the same token, the term 'benefit' means the receiving as the exchange for a promise some performance or forbearance which the promisor was not previously entitled to receive." *Id.*

*Mantle v. N. Star Energy & Constr. LLC,* 2019 WY 29, ¶ 69, 437 P.3d 758, 784 (Wyo. 2019).

[¶14] A non-compete agreement is supported by consideration when it is "entered into contemporaneously with the employment itself[.]" *CBM Geosolutions,* ¶ 13, 215 P.3d at

5

1059. *See also, Hopper,* 861 P.2d at 540. However, when an employer requests an existing employee sign a non-compete agreement, the employer must provide "separate contemporaneous consideration" for the new promise; continued employment, alone, is insufficient. *Hopper,* 861 P.2d at 541 (citing Howard A. Specter & Matthew W. Finkin, *Individual Employment Law and Litigation* § 8.02 (1989)). The separate consideration given in exchange for "an ancillary promise not to compete made after creation of the employment relationship would include promotion, pay raise, special training, employment benefits or other advantages for the employee." *Hopper,* 861 P.2d at 541 (citing *Ridley,* 180 P.2d at 125-26) (other citations omitted).

[¶15] The record supports a conclusion that Best Home is likely to succeed in proving adequate consideration for Ms. Wolfe's promise not to compete. Ms. Wolfe signed the Agreement containing the non-compete provision when she began her employment with Best Home in 2017. Under our precedent*,* that is sufficient consideration to support the non-compete provision. *Hopper,* 861 P.2d at 540. However, to justify the preliminary injunction with respect to Ms. Youngren and Ms. Brown, who were already employed by Best Home at the time they signed the Agreement, Best Home was required to present evidence showing it gave separate consideration for their promises not to compete. *Hopper,* 861 P.2d at 540-41.

[¶16] The Agreement does not contain an express statement describing the consideration Best Home gave Ms. Youngren or Ms. Brown in exchange for the commitment not to compete. Ms. Youngren and Ms. Brown maintain that, because the Agreement contained an integration clause, consideration is insufficient on the face of the document. The integration clause stated:

> I understand that with respect to the matters addressed in this agreement, this document sets forth the entire agreement between the parties and supersedes and cancels any and all prior or contemporaneous agreements, contracts, understandings, promises or representations. No amendment to this agreement shall be effective unless it is put in writing and signed by the parties.

[¶17] The integration clause does not establish a lack of consideration because, by its express terms, it pertains only to "matters addressed in this agreement." Individual consideration is not addressed in the Agreement. Consequently, the integration clause does not apply to consideration and does not preclude the possibility that Ms. Youngren and Ms. Brown received some consideration for signing the agreement. *See Ecocards v. Tekstir, Inc.,* 2020 WY 38, ¶ 18, 459 P.3d 1111, 1118 (Wyo. 2020) (the words used in a contract are interpreted in accordance with the plain meaning a reasonable person would give them); *Pennaco Energy, Inc. v. KD Co. LLC,* 2015 WY 152, ¶ 25, 363 P.3d 18, 25-26

6

(Wyo. 2015) (when a contract is clear and unambiguous, we limit our inquiry to the plain language contained within the four corners of the document).

[¶18]   Furthermore, a writing that does not recite consideration is not totally integrated. *City of Warwick v. Boeng Corp.,* 472 A.2d 1214, 1219 (R.I. 1984) (citing 2 Restatement (Second) *Contracts* § 210, comment c at 118-19 (1981)).   Under such circumstances, the parol evidence rule does not apply and extrinsic evidence is admissible to establish consideration.   *Id.   See also, N. Am. Uranium, Inc. v. Johnston,* 77 Wyo. 332, 316 P.2d 325, 331 (Wyo. 1957) (when a contract does not fully set out consideration, it is not completely integrated and parol evidence is admissible on the issue); Restatement of Contracts § 240(2) (1932) ("Where no consideration is stated in an integration, facts showing that there was consideration and the nature of it, even if it was a promise, or any other facts that are sufficient to make a promise enforceable, are admissible in evidence and are operative.").

[¶19]   The district court ruled the "per patient income that [Ms. Youngren and Ms. Brown] received when they signed the non-compete clause and went into the psych ward granted them [consideration]."   Best Home's human resources manager, Vanessa Lewis, testified signing the Agreement was a prerequisite for Ms. Youngren and Ms. Brown to work in Best Home's psychiatric unit, where they made substantially more money.   A promotion, pay raise, or other advantage to an employee given by the employer in exchange for a non-compete agreement may be sufficient consideration.   *Hopper*, 861 P.2d at 541.   However, Ms. Lewis also stated "all employees who work for Best Home [] who are [registered nurses] have to sign" the Agreement, not just those who work in the psychiatric unit. (Emphasis added).   Ms. Lewis's suggestion that Ms. Youngren and Ms. Brown received the special privilege of working in the psychiatric unit in exchange for signing the Agreement appears to be a post hoc attempt to find consideration for the Agreement. Further, Ms. Youngren testified she worked in the psychiatric unit before she signed the Agreement and Best Home did not give her anything for signing it.   Best Home did not refute Ms. Youngren's testimony.   When an employer requires all existing employees to sign an employment contract containing a non-compete provision, the employer must show the existing employees received some specific benefit that did not exist before they signed. Continued employment is not sufficient consideration to support a non-compete agreement.   *Hopper,* 861 P.2d at 540-41.

[¶20]   Best Home's chief executive officer, Benjamin Fehr, testified Ms. Youngren and Ms. Brown received more compensation on an annual basis after they signed the Agreement.   Like Ms. Lewis, Mr. Fehr implied the Nurses received a raise, the opportunity to work in the psychiatric unit where they could work more hours, or a combination thereof, in return for signing the Agreement.   Best Home's payroll records confirm Ms. Youngren's pay rate was the same before and after signing the Agreement, and, as we said above, she was already working in the psychiatric unit when she signed it.   The evidence, even when

7

viewed in the light most favorable to Best Home, did not show Ms. Youngren's promise not to compete was supported by consideration.

[¶21] Mr. Fehr testified Ms. Brown received a raise and training to work in the psychiatric unit, resulting in higher annual pay in the 18 months after she signed the Agreement. However, Ms. Brown testified she did not receive additional compensation or training which qualified her for new credentials in exchange for signing the Agreement. Best Home did not present any evidence showing it gave Ms. Brown a raise when she signed the Agreement in early June 2016. Ms. Brown did receive a small raise in December 2016, but she testified Best Home gave her the raise to account for her years of experience, not for signing the Agreement. Moreover, she did not begin working in the psychiatric unit until October 2017 – 16 months after she signed the Agreement. The timing of the raise does not correlate with when she signed the Agreement or began working in the psychiatric unit. Although consideration for an existing employee's non-compete agreement may consist of assisting the employee in obtaining further licensing or certifications, Best Home presented no evidence showing what training it provided to Ms. Brown and she stated she already had psychiatric training from her prior employment at the Wyoming State Hospital. The evidence, even when viewed in favor of Best Home, did not establish Ms. Brown received "separate contemporaneous consideration" for signing the Agreement.

[¶22] After reviewing the record, we are left with a definite and firm conviction the district court committed clear error by finding Ms. Youngren and Ms. Brown were allowed to work in the psychiatric unit and earned more money as consideration for signing the Agreement. The strong weight of the evidence shows Best Home simply required every existing employee to sign the Agreement and did not provide separate consideration to Ms. Youngren or Ms. Brown for doing so. Because Best Home did not show it is likely to prove it gave Ms. Youngren or Ms. Brown consideration for signing the Agreement, the district court abused its discretion by enjoining them from working for Best Home's competitors.

### b. *Reasonableness of Restraint of Trade*

[¶23] Best Home likely can prove it gave consideration for Ms. Wolfe's promise not to compete; therefore, we will address the likelihood that Best Home will prevail in establishing the other requirements for valid non-compete agreements. This analysis will, of course, apply to all of the Nurses.

[¶24] The fifth element of the *Hopper* test considers whether the restraint on trade violates public policy.[5] *Hopper,* 861 P.2d at 540. "An agreement not to compete is in restraint of

---

[5] The fourth *Hopper* element requires an otherwise valid non-compete agreement to be reasonable in duration and geographical scope. If a non-compete agreement is overly broad, the court may use the "blue pencil rule" to limit it to a reasonable term and area. *See Hopper,* 861 P.2d at 545-46. Because we conclude Best Home failed to show it is likely to succeed in proving the non-compete provision of the Agreement is

8

trade and . . . unenforceable on grounds of public policy unless it is reasonable." *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 681 (Tex. 1990). *See also, Palmetto Mortuary Trans., Inc. v. Knight Sys., Inc.,* 818 S.E.2d 724, 729 (S.C. 2018) (a covenant not to compete violates public policy if it is not a reasonable restraint on trade) (citations omitted).

[¶25]   The district court concluded the non-compete provision of the Agreement was "not against public policy," but it failed to examine whether the agreement was a reasonable restraint on trade. *See CBM Geosolutions,* ¶ 6, 215 P.3d at 1057 ("We review the question of whether the district court applied the proper legal standard de novo."). A "'restraint [on trade] is reasonable only if it (1) is no greater than is required for the protection of the employer, (2) does not impose undue hardship on the employee, and (3) is not injurious to the public.'" *Hopper,* 861 P.2d at 539 (quoting Harlan M. Blake, *Employee Agreements Not to Compete,* 73 Harv. L. Rev. 625, 648–49 (1960)). *See also,* Restatement (Second) Contracts § 188(1) ("A promise to refrain from competition that imposes a restraint that is ancillary to an otherwise valid transaction or relationship is unreasonably in restraint of trade if (a) the restraint is greater than is needed to protect the promisee's legitimate interest, or (b) the promisee's need is outweighed by the hardship to the promisor and the likely injury to the public.").[6]

[¶26]   To establish the restraint is no greater than necessary to protect the employer's interest, the employer has the initial burden of proving a non-compete agreement has a fair relation to, and is necessary for, the business interests for which protection is sought. *Hopper,* 861 P.2d at 539 (citing *Tench v. Weaver,* 374 P.2d 27, 29 (Wyo. 1962)). The employer may use a non-compete agreement to protect itself from improper and unfair competition from a former employee, but it "is not entitled to protection from ordinary competition." *Id.*

[¶27]   The interests an employer may protect with a non-compete agreement include:

---

consistent with public policy, we do not need to address the reasonableness of its duration or geographical limitations.

[6] In balancing the interests of the employer, employee and public, courts consider factors such as:

> the degree of inequality in bargaining power; the risk of the covenantee losing customers; the extent of respective participation by the parties in securing and retaining customers; the good faith of the covenantee; the existence of sources or general knowledge pertaining to the identity of customers; the nature and extent of the business position held by the covenantor; the covenantor's training, health, education, and needs of his family; the current conditions of employment; the necessity of the covenantor changing his calling or residence; and the correspondence of the restraint with the need for protecting the legitimate interests of the covenantee.

*Hopper,* 861 P.2d at 540 (quoting *Philip G. Johnson & Co. v. Salmen,* 211 Neb. 123, 317 N.W.2d 900, 904 (1982)).

> (a) the employer's trade secrets which have been communicated to the employee during the course of employment; (b) confidential information communicated by the employer to the employee, but not involving trade secrets, such as information on a unique business method; and (c) special influence by the employee obtained during the course of employment over the employer's customers.

*Hopper,* 861 P.2d at 540. *See also, DeSantis,* 793 S.W.2d at 682 ("Examples of legitimate, protectable interests include business goodwill, trade secrets, and other confidential or proprietary information." (citing Restatement (Second) of Contracts § 188 comments b, g (1981))). *Cf. Ridley,* 180 P.2d at 130 ("A process commonly known in the trade is not a trade secret and will not be protected by an injunction[.] A trade secret is . . . a plan or process, tool, mechanism or compound known only to its owner and those of his employees to whom it is necessary to confide it[.]").

[¶28] The non-compete agreements we have approved in other cases protected distinct special business interests. In *Hopper*, we stated "[e]mployers are entitled to protect their business from the detrimental impact of competition by employees who, but for their employment, would not have had the ability to gain a special influence over clients or customers." *Hopper,* 861 P.2d at 542. The evidence of All Pet and Alpine's special interests in having Dr. Hopper sign the non-compete agreement included:

> Dr. Hopper moved to Laramie upon completion of her degree prior to any significant professional contact with the community. Her introduction to All Pet's and Alpine's clients, client files, pricing policies, and practice development techniques provided information which exceeded the skills she brought to her employment. While she was a licensed and trained veterinarian when she accepted employment, the additional exposure to clients and knowledge of clinic operations her employers shared with her had a monetary value for which the employers are entitled to reasonable protection from irreparable harm.

*Id.* In *CBM Geosolutions*, Gas Sensing had a special business interest worthy of protection because it had trained its employees in innovative technologies which helped maintain the company's competitive edge in the marketplace. *CBM Geosolutions,* ¶ 10, 215 P.3d at 1058.

[¶29] Best Home did not show it would probably succeed in establishing a special business interest subject to protection by the non-compete provision of the Agreement.

10

The stated purpose of the provision was "to protect [Best Home], its employees and its customers against former employees using company information, ideas, contacts or relationships against it." Best Home characterizes the psychiatric unit as a special business interest because it used a unique subscription service. Ms. Lewis testified Best Home started the psychiatric unit around the time it began requiring employees to sign the Agreement in 2016. The record wholly refutes her statement. On cross examination, Ms. Lewis admitted "the psychiatric unit was established in part by Ms. Wolfe" years earlier. Ms. Youngren testified she worked in the psychiatric unit prior to signing the Agreement.

[¶30] The record also does not support a conclusion the business model of the psychiatric unit was a trade secret or proprietary information. Ms. Wolfe was clearly aware of the workings of the psychiatric unit prior to beginning her employment with Best Home in 2017 because she founded the unit. Best Home did not identify any trade secrets, specific types of confidential information, or special relationships being guarded through the non-competition provision of the Agreement. Ms. Lewis testified Best Home had its employees sign the Agreement because it "had a lot of patients. And due to any risk to losing them in the future, we enforced" it. Her testimony indicates Best Home was simply trying to prevent ordinary competition, which, as a matter of law, is insufficient justification for a non-compete agreement. *Hopper,* 861 P.2d at 539 (citing *Tench,* 374 P.2d at 29).

[¶31] Best Home did not show it was likely to succeed in establishing the non-compete provision was consistent with public policy because the record does not show it was a reasonable restraint on trade. *Hopper,* 861 P.2d at 540. We need not, therefore, determine whether the district court properly balanced Best Home's interest against the hardship to the Nurses and the likely injury to the public. *Id.* at 539. The district court abused its discretion by enjoining the Nurses from working for Best Home's competitors.[7]

## 2. *Refusal to Allow Evidence of Harm to the Public*

[¶32] Although our conclusion the district court abused its discretion by granting the preliminary injunction is dispositive, we will also address the district court's evidentiary ruling to provide guidance for future proceedings in this case. The Nurses assert the district court erred by refusing to allow them to present evidence showing enforcement of the non-compete agreement would harm the public interest. The admissibility of evidence at a preliminary injunction hearing is reviewed on appeal for abuse of discretion. *See generally*, *Sega Enter. Ltd. v. Accolade, Inc.,* 977 F.2d 1510, 1530 n.10 (9th Cir. 1992) ("In a preliminary injunction proceeding, the district court is accorded broad discretion in ruling on the admissibility of evidence." (citing *Flynt Distrib. Co., Inc. v. Harvey,* 734 F.2d 1389, 1394 (9th Cir.1984))). *See also, Kos Pharm., Inc. v. Andrx Corp.,* 369 F.3d 700, 718-19

---

[7] Because Best Home failed to make a clear showing of probable success on the merits, we do not need to address whether the district court properly concluded it was possible Best Home would be irreparably harmed by the Nurses' actions, as required for a preliminary injunction. *CBM Geosolutions,* ¶ 7, 215 P.3d at 1057 (citing *Weiss,* 434 P.2d at 762).

11

(3d. Cir. 2004) (the district court has discretion in determining the admissibility of evidence presented at a preliminary injunction hearing).

[¶33]  The Nurses called Aimee Ottley, the executive director of Uinta Home Health, to testify about their work for the company.  Best Home objected to Ms. Ottley's testimony as irrelevant "to the non-competes and what's at issue."  The Nurses responded that Ms. Ottley's testimony was relevant to the question of whether enjoining them from providing home health services would injure the public by jeopardizing patient care.  The district court apparently agreed with Best Home's position because it sustained the objection.

[¶34]  The district court abused its discretion by refusing to allow Ms. Ottley to testify about how the injunction may harm the public interest.  In their appellate briefs, the parties focus on the role injury to the public plays in determining whether a preliminary injunction should be granted.  In *CBM Geosolutions*, we quoted the federal standard for issuing preliminary injunctions set out in *Greater Yellowstone Coalition v. Flowers,* 321 F.3d 1250, 1255 (10th Cir. 2003), which includes the factor – "'the injunction, if issued, will not adversely affect the public interest[.]'"  *CBM Geosolutions,* ¶ 8, 215 P.3d at 1057.  We did not, however, express any opinion on the federal standard because the district court did not rely on it in granting Gas Sensing the preliminary injunction.  *Id.*

[¶35]  Likewise*,* we need not address the applicability of the federal standard for preliminary injunctions here because, as we stated above, one of the considerations in determining if a non-compete agreement is unreasonable and violates public policy is whether the restraint on trade will injure the public.  *Hopper,* 861 P.2d at 539; Restatement (Second) Contracts § 188(1).  The evidence of harm to the public interest was, therefore, relevant in determining whether Best Home was likely to succeed in enforcing the Agreement.  The district court abused its discretion by refusing to allow the Nurses to present evidence that enforcement of the non-compete provision of the Agreement would injure the public.


## CONCLUSION

[¶36]  The district court abused its discretion by enjoining the Nurses from working for Best Home's competitors.  Best Home did not show it would probably succeed in proving Ms. Youngren's and Ms. Brown's non-compete agreements were supported by consideration.  As to all three of the Nurses, Best Home made an insufficient showing of probable success in proving the non-compete provision was reasonable and not against public policy.  Finally, the court abused its discretion by refusing to allow testimony about how the restraint on trade could injure the public.

[¶37]  Reversed and remanded for proceedings consistent with this decision.