# IN THE SUPREME COURT, STATE OF WYOMING

# 2022 WY 14

OCTOBER TERM, A.D. 2021

January 28, 2022

JORGE MALAVE,

Appellant
(Defendant),

v.

S-21-0140

WESTERN WYOMING BEVERAGES,
INC., a Wyoming corporation,

Appellee
(Plaintiff).

*Appeal from the District Court of Sweetwater County*
*The Honorable Suzannah G. Robinson, Judge*

*Representing Appellant:*
    *Hilary K. Brewster, Law Office of Hilary K. Brewster, P.C., Rock Springs, Wyoming.*

*Representing Appellee:*
    *Spencer B. King, King & King, LLC, Jackson, Wyoming.*

*Before FOX, C.J., and DAVIS\*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*\*Justice Davis retired from judicial office effective January 16, 2022, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2021), he was reassigned to act on this matter on January 18, 2022.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**FOX, Chief Justice.**

[¶1]   The district court ruled that Western Wyoming Beverages, Inc., (WWB) would likely succeed on the merits of its claim that its former employee, Jorge Malave, had breached his noncompete agreement and that WWB would suffer irreparable harm if Mr. Malave were not enjoined from continuing to work for WWB's competitor. Mr. Malave appeals, and we reverse.

## *ISSUE*

[¶2]   The dispositive issue is whether the district court abused its discretion when it enjoined Mr. Malave from working as a salesman for WWB's competitor.

## *FACTS*

[¶3]   Mr. Malave discussed various facts in his brief which are not supported by the record, as there is neither a transcript of the hearing on the preliminary injunction, nor a W.R.A.P. 3.03 statement of the evidence.

> When this Court does not have a properly authenticated transcript before it, it must accept the trial court's findings of fact upon which it bases any decisions regarding evidentiary issues. The failure to provide a transcript does not necessarily require dismissal of an appeal, but our review is restricted to those allegations of error not requiring inspection of the transcript. Lacking a transcript, or a substitute for the transcript, the regularity of the trial court's judgment and the competency of the evidence upon which that judgment is based must be presumed. Under these circumstances, because we must accept the district court's findings of fact, our review is effectively limited to determining whether or not an error of law appears on the record.

*Samiec v. Fermelia*, 2013 WY 101, ¶ 8, 308 P.3d 844, 846 (Wyo. 2013) (cleaned up).

[¶4]   The Court has been provided a transcript of the district court's oral ruling, in which it stated the following facts: Mr. Malave began working for WWB, a distributor of Pepsi products, on September 19, 2016.  He signed a noncompete agreement at the time of his employment.  When he left WWB May 22, 2020, he was in a sales position in southwest Wyoming, dealing "face-to-face with various customers."  He then began work for High Country Coca-Cola, a direct competitor of WWB.  Although the district court initially stated that, while working for WWB, Mr. Malave obtained what the court characterized as "trade secrets or information of a sensitive or confidential nature,"

1

including pricing for specific customers, it ultimately held "[t]here is no evidence to show that Mr. Malave has given trade secrets or pricing to customers." Mr. Malave developed relationships with WWB's customers.

[¶5] Concluding there was a valid and reasonable noncompete agreement,[1] that WWB would likely succeed on the merits of its claim that Mr. Malave had violated it, and that WWB would suffer "possible irreparable injury" if no injunction were entered, the district court ordered a preliminary injunction. It enjoined Mr. Malave "from a sales or distribution position of a direct competitor [of WWB], that would include Coke." It found some of the noncompete's restrictions were too broad, and limited the order so that Mr. Malave could, for instance, take a position in a warehouse or a position "that was not in direct conflict in a sales position or distribution position . . . ." The court further found:

> On one occasion since Mr. Malave has been working for Coke a customer at Get N Go, there was a customer of both Western Wyoming and Coke, gave a section of shelf space for products that was contracted to be Western Wyoming and that was given to Coke. That was a customer that Mr. Malave had with both Western Wyoming and Coke. As a result Western Wyoming had to negotiate with Get N Go to get half of that shelf space back, never receiving all of it back even though Western Wyoming's contract with the customer was clear that the shelf space was part of their contract.
>
> . . . That situation of losing s[h]elf space was something that Mr. Malave would have been aware of as he was the prior salesperson for Western Wyoming and was currently at the time that that occurred a salesperson for Coke for that particular customer at the time it occurred.

---

[1] The "Confidentiality and Non Compete Agreement" is in the record as Exhibit 1. It provides, in relevant part:

> Employee . . . agrees that during the term of this agreement and for a period of 12 months from the date of termination of this agreement, for any cause whatsoever, the Employee shall not, directly or indirectly, own, manage, operate, join, control, be employed by or otherwise participate or be connected in any manner with, any business that is competition with, or directly or indirectly engages in the production, service, distribution, or sale of any products that are the same or substantially similar to the products produced, serviced, distribute[d], or sold by WWB . . . .

2

[¶6]  The court concluded these facts were sufficient to support a temporary injunction, reasoning that WWB would suffer injury from "the loss of relationships and good will with customers, the same customers Mr. Malave has had with [WWB] and currently does have with Coke."  It found the injury was irreparable because "[i]t is difficult or impossible to put a price tag or dollar figure of damages that could result from that relationship damage."  Even though the noncompete agreement stated it would apply "during the term of this agreement and for a period of 12 months from the date of termination," the district court, without explanation, ordered the injunction to take effect for one year starting from the date of its oral ruling, eight months after Mr. Malave's employment with WWB had terminated.

## STANDARD OF REVIEW

[¶7]  We review a district court's preliminary injunction for an abuse of discretion, which means the court "acts in a manner which exceeds the bounds of reason under the circumstances."  *Brown v. Best Home Health & Hospice, LLC*, 2021 WY 83, ¶ 8, 491 P.3d 1021, 1026 (Wyo. 2021) (citations omitted).  We review the district court's fact findings for clear error and its conclusions of law de novo.  *Id.* at ¶ 9, 491 P.3d at 1026.  Because this matter is presented to us with barely any record, we accept the district court's fact findings as true and only review its conclusions of law.

## DISCUSSION

[¶8]  Injunctive relief is an extraordinary remedy, which will only be granted upon "a clear showing of probable success [on the merits of the suit] and possible irreparable injury to the plaintiff, lest the proper freedom of action of the defendant be circumscribed when no wrong has been committed."  *Id.* at ¶ 7, 491 P.3d at 1026 (alteration in original) (quoting *CBM Geosolutions, Inc. v. Gas Sensing Tech. Corp.*, 2009 WY 113, ¶ 7, 215 P.3d 1054, 1057 (Wyo. 2009)).  "[H]arm is irreparable when there is no adequate remedy at law to compensate for it."  *Best Home*, 2021 WY 83, ¶ 7, 491 P.3d at 1026 (citing *Dunmire v. Powell Fam. of Yakima, LLC (In re Kite Ranch, LLC)*, 2008 WY 39, ¶ 22, 181 P.3d 920, 926 (Wyo. 2008)).

## I.  Likelihood of Success on the Merits

[¶9]  We apply a different analysis to a noncompete agreement than we do to most contracts.  Contracts which hinder employees' freedom to work "are 'strictly construed and rigidly scanned and are declared void unless necessary for the reasonable protection of the employer.'"  *Best Home*, 2021 WY 83, ¶ 10, 491 P.3d at 1027 (quoting *Ridley v. Krout*, 63 Wyo. 252, 265, 180 P.2d 124, 127 (1947)).  The burden is on the employer to overcome the presumption that the noncompete is invalid by proving "'that there existed some special circumstances which rendered it reasonably necessary for the protection of

3

the [employer's] business.'" *Best Home*, 2021 WY 83, ¶ 10, 491 P.3d at 1027 (alteration in original) (quoting *Ridley*, 63 Wyo. at 268, 180 P.2d at 129).

[¶10] We held in Wyoming's seminal case on noncompetes that "[a] valid and enforceable covenant not to compete requires a showing that the covenant is: (1) in writing; (2) part of a contract of employment; (3) based on reasonable consideration; (4) reasonable in durational and geographical limitations; and (5) not against public policy." *Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 540 (Wyo. 1993) (citations omitted). The district court found all those elements were satisfied. It recognized that the public policy element required a determination that the covenant is reasonable. We review the reasonableness determination de novo.

[¶11] In two recent cases, this Court has reversed orders enforcing noncompete agreements because the decision-maker below failed to impose the burden on the employer to establish the restraint of trade was reasonable. In *Skaf v. Wyoming Cardiopulmonary Servs., P.C.*, we reversed a district court judgment confirming an arbitration award against a doctor who allegedly violated his noncompete agreement because the arbitration panel made a "manifest error of law" when it began with the premise that "'Wyoming law *strongly supports covenants not to compete* and the enforcement of the same *permits public policy* to be served.'" 2021 WY 105, ¶¶ 33, 41, 495 P.3d 887, 897, 900-01 (Wyo. 2021) (emphasis in original). In *Best Home*, we reversed the district court's grant of a preliminary injunction restraining home health nurses from working for their former employer's competitors because the former employer "did not show it was likely to succeed in establishing the non-compete provision was consistent with public policy because the record does not show it was a reasonable restraint on trade." 2021 WY 83, ¶ 31, 491 P.3d at 1032.

[¶12] In *CBM Geosolutions*, this Court upheld a preliminary injunction enforcing a noncompete agreement. There, the district court found the former employees had been trained in innovative technologies essential to the employer's competitive edge. 2009 WY 113, ¶ 10, 215 P.3d at 1058. WWB's position is more like that of Mr. Ridley, the owner of Ridley's Repair Shop, who sought to enjoin Frank Krout from opening his own general mechanical repair shop. The Court there upheld the district court's denial of Mr. Ridley's petition for injunctive relief, because "no confidential information . . . was imparted to" Mr. Krout, *Ridley*, 63 Wyo. at 271, 180 P.2d at 130, and it cited the rule that:

> An employer cannot by contract prevent his employee from using the skill and intelligence acquired or increased and improved through experience or through instruction received in the course of the employment, for it becomes part of the employee's personal equipment as distinguished from trade

4

secrets, special influence with customers or confidential information acquired during the course of the employment.

*Id.* at 273, 180 P.2d at 131 (quoting 5 Williston on Contracts, Rev. Ed., § 1652).

[¶13]  The *Ridley* Court went on to consider whether the restraint on Mr. Krout might be considered reasonable if he had acquired special influence with customers during the course of his employment.  *Id.* at 274, 180 P.2d at 131.  The Court concluded that, even though Mr. Krout solicited business from some former customers as well as from people he had known all his life, he did not exert special influence over them.  The customers of Ridley's Repair Shop "would naturally be known to almost anyone who would take the trouble of making inquiries," and "whatever special influence [Mr. Krout] may have acquired with [Ridley's customers] would have disappeared in a comparatively short period of time . . . ."  *Id.* at 277, 180 P.2d at 132-33.

[¶14]  Mr. Malave was a salesman; he received no extensive training for the job, and his position was not of the type that gave him access to innovative technology.  We find as a matter of law that none of the information he had constituted a trade secret.  He delivered Pepsi or Coke products to merchants who were easily identifiable.  While he likely developed relationships with the customers during the course of his employment with WWB, there was no finding of a special relationship.  Like Mr. Ridley, WWB has not met its burden of proving probable success on the merits of the reasonableness of its noncompete agreement with Mr. Malave.  Absent "special facts . . . which make the contract reasonable, an employer must be prepared to encounter competition even at the hands of a former employee."  *Ridley*, 63 Wyo. at 268, 180 P.2d at 128.

## II.     *Irreparable Harm*

[¶15]  The district court found irreparable harm in the "loss of relationships and good will with customers . . . ."  We have discussed the absence of any special relationship with customers above.  We next address the district court's finding that Mr. Malave had confidential information of pricing for WWB's customers, relying on an instance when the Get N Go gave half the shelf space to Coke that it had contracted to provide to WWB.  Such a shift in product positioning, without more, is wholly inadequate to support a finding of irreparable harm.  *See, e.g.*, *Bayou Bottling, Inc. v. Dr. Pepper Co.*, 725 F.2d 300, 304 (5th Cir. 1984) ("The shelf space argument also lacks merit.  Stores allot shelf space to the bottlers in proportion to market activity.  A bottler with a popular product is given a greater portion of available shelf space than a bottler with a product which has less sales appeal.").

5

[¶16] The district court abused its discretion when it entered a preliminary injunction against Mr. Malave. We reverse and remand to the district court for proceedings consistent with this decision.[2]

---

[2] It is difficult to see how Mr. Malave can be made whole after having been enjoined from working for WWB's competitor since the district court's January 21, 2021 oral ruling. There is no indication in the record that the security required by W.R.C.P. 65(c) was ever demanded by the district court or posted by WWB. This is especially troubling since the district court essentially extended the term of the one-year noncompete when it made it effective eight months after Mr. Malave's termination, contrary to the clear terms of the agreement.