## STOWE ET AL. v. POWERS.

### (No. 633.)

MARSHALING SECURITIES—INJUNCTION—TEMPORARY RESTRAINING ORDER—DISCRETION OF COURT—REVIEW.

1. The equitable remedy of marshaling securities depends upon the principle that a person having two funds to satisfy his demands shall not, by his election, disappoint a party having but one fund. The general rule is that if one creditor by virtue of a lien or interest can resort to two funds, and another to one of them only—as where one holds a prior mortgage on two parcels of land, and another a subsequent mortgage on but one of the parcels— the former must seek satisfaction out of that fund which the latter cannot touch. But, generally, relief will not be given if it will substantially delay or inconvenience the paramount incumbrancer in the collection of his debt, or prejudice him in any manner; for it is deemed to be unreasonable that he should suffer because some one else has taken imperfect security; and, therefore, relief may be denied where the fund to be resorted to is dubious, or one which may involve the creditor in litigation.

2. The mere fact that the prior creditor with the right to resort to two funds may suffer some delay, but unaccompanied by any other injury, as where foreclosure may be necessary, is not a sufficient reason for denying the equitable

: remedy of marshaling securities in favor of the creditor entitled to resort to one of the funds only; the true rule being that the relief will not be granted if it will endanger thereby the prior creditor, or in the least impair his prior right to raise his debt out of both funds.

3. Whether a temporary injunction shall be granted, or, having been granted, whether it shall be dissolved, are matters resting in the sound discretion of the court; and an appellate tribunal will not interfere with or control the action of the court below therein, unless it appears that there has been a clear abuse of discretion.

4. Where injunction is not the principal relief sought in the cause, but is applied for and granted for the purpose of maintaining the subject of the litigation in the same condition as at the commencement of the suit until the respective rights of the parties may be determined, *held,* on error from an order denying a motion to dissolve a temporary injunction, that the question as to the right to the principal relief sought was before the court only so far as it affected the propriety of granting and continuing the temporary injunction.

5. Although one holding a junior lien upon a part only of the fund or property which is subject to the prior lien is entitled to pay off the prior debt and be thereby subrogated to the rights of the senior lien, and, under some circumstances, it may be equitable to require him to do so where he seeks relief as against the holder of such lien, the law does not require that in all cases he shall offer to pay the debt of the holder of the senior lien and take the latter's securities to entitle him to demand that the latter resort in the first instance to the singly charged fund or property, nor is he barred of the right to make such demand by declining an offer of the prior securities upon his payment of the debt.

6. In granting temporary relief by interlocutory injunction, courts of equity do not generally anticipate the ultimate determination of the questions of right involved; they merely recognize that a sufficient case has been made out to warrant the preservation of the property or rights in issue in *statu quo* until a hearing upon the merits, without expressing, or having the means of forming, a final opinion as to such rights.

7. *Held,* on error from an order denying a motion to dissolve a temporary injunction, where injunction was not the

principal relief sought, that the court ought not to anticipate the final judgment of the lower court by the action taken on the appeal, and that it would not be intimated what the final judgment of that court should be at the final hearing.

8. Where, on error from an order denying a motion to dissolve a temporary injunction, it was contended that the petition was insufficient in a particular respect; *held,* that, since the petition might be amended in that particular if the facts warrant it, the injunction ought not to be vacated without allowing an opportunity to amend the petition, and, therefore, it was unnecessary to decide whether or not the objection to the petition was well taken.

9. *Held,* on error from an order denying a motion to dissolve a temporary injunction, that there was not an abuse of discretion in the order complained of.

[Decided June 14, 1911.]                    (116 Pac. 576.)

Error to the District Court, Big Horn County, Hon. Carroll H. Parmelee, Judge.

The material facts are stated in the opinion.

*William C. Snow,* for plaintiffs in error.

Upon the pleadings and affidavits in the case, the quit claim deed of Stowe must be considered a prior lien upon the premises therein described. But whether or not Powers or Stowe have a first lien thereon is immaterial here, for in either case Stowe had the right to foreclose by advertisement. The first ground upon which the injunction was applied for, viz: that the foreclosure notice offers for sale only part of the property covered by the Stowe mortgages, it is merely necessary to refer the court to the notices of sale, which are attached to the petition. From them it will appear that all of the property included in Stowe's mortgages was offered for sale. To have advertised in each advertisement all of the property described in each mortgage for sale would have offered some of the property for sale twice where the same was included in both mortgages. But a mortgagee may offer for sale upon foreclosure such part only as he desires—unless by so doing

the best price for the whole might not be obtained. The complaint seems to be that the mortgagee proposes to offer for sale more than is necessary to satisfy his debt, not less.

It is complained that only the land covered by the Powers mortgage is being offered for sale. A copy of the advertisement shows the fact to be otherwise. It is contended on behalf of Powers that Stowe ought not to be allowed to first resort to the doubly incumbered property. That raises substantially the only question in the case, which is entitled to serious consideration. It is the general rule that if a mortgagee has other security for his demand, and another creditor has a lien upon one of the funds only, the former must resort in the first place to that security upon which no one other than his debtor has any claim. (2 Jones on Mort. (2nd Ed.) Sec. 1628.) The mortgagee is not obliged to resort to the singly incumbered fund in the event that by doing so he will be delayed or inconvenienced. (4 Pomeroy's Eq. (3rd Ed.) Sec. 1414; Jones v. Zollicoffer, 2 Hawks, 623, 11 Am. Dec. 795.) Or where the money could not be realized so quickly as from other land. (2 Jones on Mort. (2nd Ed) Sec. 1628.) Or where there is any doubt that the singly charged fund is sufficient to satisfy the debt. (Hudkins v. Ward, 30 W. Va. 204; 8 Am. St. 22.) Or where the senior creditor is willing to turn over to the junior creditor all securities on the payment of his debt. (Hudkins v. Ward, *supra;* Willcocks v. Hart, 1 Paige, 185; Brinkerhoff v. Marvin, 5 Johns. Ch. 321.) The burden of proof to show that none of the exceptions to the general rule exists rests upon the plaintiff. To authorize a marshaling of assets it must be clear that the creditor can sustain no loss thereby, and will not be in any way delayed nor have his claim subjected to any additional peril. (Ins. Co. v. Ins. Co., 10 Md. 517, 69 Am. Dec. 174; Farwell v. Bigelow, 112 Mich. 285; 19 Ency. L. 1265.) All the rights of Powers would be amply protected by an order subrogating him to the rights of Stowe, after the latter's debt had been satisfied. When subrogation

will promote justice no injunction is necessary. (Canal Co.'s App., 38 Pa. St. 512; Dickson v. Back (Ore.), 51 Pac. 727.) The junior creditor has a right to be subrogated on paying off the senior's equity. (Bispham's Eq., (4th Ed.) Secs. 335-338; 2 Jones on Mort. (2nd Ed.) Sec. 1628.) In the absence of fraud, and unless it is shown that the foreclosing lienholder is governed by mere caprice alone in seeking satisfaction out of the doubly incumbered fund, equity will not enjoin. (Jones v. Zollicoffer, *supra;* Dickson v. Back, *supra.*) In most cases subrogation will accomplish justice. (Bispham's Eq., Secs. 340-341.) To entitle the plaintiff to the relief sought the petition should have alleged that the plaintiff had offered to pay the debt due Stowe from Worland, and that Stowe had declined to turn over his securities. The right of one to foreclose his mortgage by advertisement is a substantial one, and cannot be taken from him. The object of the power is to afford a speedy remedy without the delay of a suit. (Jones on Mort. (2nd Ed.) Sec. 1797.) The mere fact that Stowe is willing to assign to Powers all his securities upon the payment of his debt, is sufficient to dispose of the case. The fact that it is apprehended that the foreclosure sale would result in clouding the title is not such a threatened injury as to authorize injunction. (2 Jones on Mortgages (2nd Ed.) Sec. 1815.) Should the hotel property be sufficient to satisfy the debt due Powers then it would follow that he is not entitled to an injunction. The allegation of the petition is insufficient to show that such property would not cover the plaintiff's debt.

*Lonabaugh & Wenzell,* for defendant in error.

An order sustaining or overruling a demurrer is not a final order which can be made the basis of a proceeding in error prior to final judgment. (Turner v. Hamilton, 10 Wyo. 177.) By calling their pleading a motion instead of demurrer the plaintiffs in error are not in a position to question the legal sufficiency of the petition in this proceeding. He who has two funds for the satisfaction of his

claim shall not, by electing to resort to the doubly charged
fund, disappoint him who has that fund only to resort to.
(Sternberger v. Sussman, 60 Atl. 195.)   The doctrine of
marshaling assets is not founded on contract but rests solely
on equitable principles.   (Loan & Trust Co. v. Kip, 85
N. E. 59.)   The doctrine has its exceptions.   (Cooper &c.
Co. v. Irvin, 120 N. W. 430; Mulhern v. Porter, 58 S. E.
60.)   On the motion to dissolve the injunction no such
issue could be tendered and judicially determined as that
attempted to be presented by the affidavits of Stowe rela-
tive to the titles to the property and water rights.   That is
a matter to be determined upon final hearing.   It is true
that in some instances a court of equity will subrogate the
subsequent incumbrancer to the rights of the prior, and
permit the prior to proceed with the sale, and if the court
should so determine in this case on final hearing, there
would be no objection to such a judgment.   On the ques-
tion of the sufficiency of the advertisements and the right
of Powers to have all the property therein described sold,
it is here urged that the advertisements under the first
mortgage entirely omits several tracts which a court of
equity would require to be sold, and on these tracts Pow-
ers has no lien whatever.   It is only fair, if Stowe is to
foreclose his mortgage, that he be required to sell all the
property described therein.   The failure to include all of
the property in the foreclosure advertisements shows such
a disregard of the rights of Powers as to warrant the grant-
ing of a temporary injunction.

POTTER, JUSTICE.

This is a proceeding in error for the review of an order
of the District Court in Big Horn county denying a motion
to dissolve a temporary injunction.   The material facts are
as follows:   E. A. Powers, defendant in error, is the holder
of two promissory notes for $6000 and $1500 respectively,
executed and delivered to him by the Worland Hotel Com-
pany, a corporation, and Charles H. Worland.   The first
note is dated July 9, 1906, and the second, October 15,

1906. The interest on the first note is represented by interest notes executed by the same parties. To secure the first note the Worland Hotel Company executed and delivered to Powers a mortgage of the same date as the note covering certain lots in the town of Worland in said county of Big Horn, and Charles H. Worland executed and delivered to him a mortgage upon 240 acres of land in said county, described as the west half of the S. W. quarter of section 26, the west half of the N. W. quarter of section 35, and the east half of N. E. quarter of section 34 in township 47, range 93 west of the sixth principal meridian. To secure the second note Worland executed and delivered to Powers another mortgage of the same date as the note covering the same lands described in his mortgage above mentioned, together with all water rights, ditches, flumes, laterals, etc., conveying water to and upon said lands and particularly all interest, right, title in and to any stock, shares or equity in the two canals known as the Big Horn and Bluff canals.

The plaintiff in error, Edward E. Stowe, holds a note for $6000, dated November 4, 1905, executed and delivered to him by said Charles H. Worland, and two mortgages and a quit claim deed executed by Worland to secure the same. One of the mortgages and the quit claim deed bear the same date as the note, and the former covers the same lands described in the mortgages executed by Charles H. Worland to Powers, with the exception of the S. W. quarter of the S. W. quarter of section 26, and in addition thereto, the N. E. quarter of the S. E. quarter of section 27, and three small tracts described by metes and bounds and to be known as certain specified lots in the town of Worland when platted, one of said tracts being located in the S. E. quarter of the N. W. quarter of section 26, and the others in the N. E. quarter of the S. W. quarter of said section, all in the township and range aforesaid. That mortgage also includes the water rights, and describes them in substantially the same manner as they are described in

the second mortgage of Worland to Powers. The quit claim deed describes 320 acres of land in section 27, said township and range, and the S. W. quarter of the S. W. quarter of section 26, the latter being the forty acre tract embraced in the two mortgages to Powers that is not covered by Stowe's first mortgage. The other mortgage to Stowe is dated December 11, 1907, and describes the N. E. quarter of the S. E. quarter of section 26, all of the two forty acre subdivisions in which are located the separate tracts described by metes and bounds in Stowe's first mortgage, and the N. W. quarter of the S. W. quarter of section 26. That mortgage and the quit claim deed also include the water rights.

It thus appears that Stowe's first mortgage is a prior lien upon all of the land embraced in the mortgages to Powers, except one forty acre tract; that his quit claim deed is a prior lien on that tract; that his first mortgage is the only lien upon one forty acre tract in section 27; that his quit claim deed is the only lien upon 320 acres in section 27; that his second mortgage is the only lien upon the N. E. quarter of the S. E. quarter of section 26, the fourth in point of priority upon the N. W. quarter of the S. W. quarter of said section; and that his two mortgages constitute the only liens upon the S. E. quarter of the N. W. quarter, and the N. E. quarter of the S. W. quarter of section 26.

By notices dated September 17, 1909, Stowe was proceeding to foreclose his two mortgages by advertisement, each notice stating that the property therein described would be sold for the purpose of foreclosing the mortgage by the sheriff of Big Horn county, or in his absence by his deputy, on the 23rd day of October, 1909. The notice of sale under the first mortgage omitted the tracts therein described by metes and bounds, but stated that the same would be offered for sale with other land under the second mortgage. The notice under the second mortgage omitted the N. W. quarter of the S. W. quarter of section 26, stating that it

would be offered for sale with other lands under the first mortgage. The last mentioned subdivision is the one covered by both of the Stowe mortgages, and also by both of the mortgages to Powers; and the tracts omitted from the notice of sale under the first mortgage are covered by Stowe's second mortgage as aforesaid by the description of the legal subdivisions in which they are respectively situated.

Before the date of sale as fixed by the foreclosure notices aforesaid, the said E. A. Powers commenced this action against the Worland Hotel Company, Charles H. Worland, Edward E. Stowe, and Felix Alston, Sheriff of Big Horn county, to recover judgment upon the notes held by the plaintiff, Powers, and to foreclose the mortgages given to secure the same, and to require the defendant, Stowe, to first exhaust the property covered by his liens and not covered by the plaintiff's mortgages. It is alleged in the sixth cause of action that the mortgages of plaintiff are a first and prior lien upon the S. W. quarter of the S. W. quarter of section 26, and are subsequent and inferior as to the remainder of the lands therein described to a mortgage given by the defendant Worland to Stowe. By this allegation the apparent priority of the quit claim deed of Stowe upon the subdivision mentioned seems to be ignored. The fact that Stowe holds the quit claim aforesaid in addition to his mortgage to secure the indebtedness of Worland to him is alleged, and that the plaintiff has no lien upon the premises therein described. It is also alleged that Stowe is proceeding to foreclose his mortgage upon lands subject to the junior liens of the plaintiff, and copies of the foreclosure notices are attached to the petition as a part thereof. Because of the omission from the property advertised by the notice to be sold under the first mortgage of the separate tracts therein described by metes and bounds, it is alleged that the notice is insufficient and it is alleged that the notice under the second mortgage omits advertising those tracts for sale. It is further alleged that the

premises described in the petition (such description including all the property covered by the various conveyances above mentioned) are wholly insufficient in value to pay and satisfy the claims of the plaintiff and the defendant Stowe; that the property is of such character that it produces a large amount of revenue, the hotel property being rented, and the farm property being seeded to alfalfa and other crops and requiring careful attention and husbandry in order to preserve the same for the creditors, and that a receiver should be appointed to take charge of, manage and handle said property until the final termination of the suit.

The prayer of the petition is that a temporary injunction may be granted restraining the defendants, Stowe and Alston, from selling or offering for sale the premises advertised to be sold by the foreclosure notices published by Stowe, and that on the final hearing such injunction be made perpetual; that a receiver be appointed of the mortgaged property; that the defendant Stowe be required to appear and disclose under oath all the property of the defendant Worland upon which he has or claims any lien for the payment of the indebtedness due him from said Worland; that the assets and property of said Worland may be marshaled and the priorities of the respective liens claimed by the parties be found, adjudged and decreed; that plaintiff may have judgment for the amount found due him, and a decree foreclosing the mortgages given to him by the Worland Hotel Company and Charles H. Worland; that the defendant Stowe may be required to first exhaust the property of the defendant Worland on which the plaintiff has no lien or claim before proceeding with the sale of the premises covered by plaintiff's mortgages; that all of said property may be sold by decree of the court and the proceeds thereof applied according to the respective rights and liens of the parties; and that plaintiff may have such other, further or different relief to which in equity he may be entitled.

Upon the petition, which was positively verified, a temporary injunction was granted enjoining the defendants Stowe and Alston from selling or offering for sale the premises described in the petition on which the plaintiff claims a lien, the injunction to take effect upon the execution of a bond for the payment to said defendants of all damages sustained by them if it be finally decided that the injunction ought not to have been granted. The order was subsequently modified so as not to forbid a postponement or postponements of the sale or advertising the same according to the statute in such case made and provided. The defendants Stowe and Alston filed a motion to dissolve the injunction on the ground that the petition is insufficient on its face to show cause for the injunction, and for the reasons stated in affidavits filed in support of the motion. The affidavits set out the mortgages and quit claim deed aforesaid executed to Stowe, and state in substance as follows: That in August or early in September, 1909, the attorneys for the plaintiff, acting for him, examined all the securities held by Stowe from said Worland, and were given for examination all the water contracts pertaining to the land described in the quit claim deed, and that the defendant Stowe offered to turn over to the plaintiff all the securities so held by him if the plaintiff would pay the debt from Worland to Stowe, which offer was declined. That the title to none of the real estate described in the quit claim deed is in Worland; but that part of the same is in the United States, and the title to the remainder is in the State of Wyoming, the latter being segregated land lying under the Big Horn County canal, to which the state has obtained title under the Carey Act. That unless and until title shall be obtained by Worland the defendant Stowe will have received no interest in land by virtue of the deed, and even should Worland acquire title the effect of the deed is problematical, and would involve the defendant Stowe in litigation, should be seek to enforce the deed as security. That Worland is the owner of certain contracts

for water for the lands covered by the deed, which provide for payment on the installment plan, and the bulk of the payments are yet to fall due; that the water rights, to one having no title to the lands, are of uncertain, if any, value; and that a proceeding to foreclose would involve doubtful questions of law. That defendant Stowe will be seriously delayed in realizing on his securities and put to additional expense, if he is not allowed to proceed to sell the lands covered by his two mortgages; and if he is forced to proceed to satisfy his debt out of the property covered by the deed the effect will not unlikely be to destroy the value, if any, which it possesses, and thus prejudice the interest of plaintiff as well as of Stowe; that Stowe has urged Worland to perfect his titles to the land covered by the deed, but he had neglected to do so. That none of the lots (the tracts described by metes and bounds) mentioned in Stowe's first mortgage have been platted.

The equitable remedy of marshaling securities, as said by Pomeroy, in his work on Equity Jurisprudence, "depends upon the principle that a person having two funds to satisfy his demands shall not, by his election, disappoint a party having but one fund. The general rule is, that if one creditor, by virtue of a lien or interest, can resort to two funds, and another to one of them only,— as, for example, where a mortgagee holds a prior mortgage on two parcels of land, and a subsequent mortgage on but one of the parcels is given to another,—the former must seek satisfaction out of that fund which the latter cannot touch." (4 Pomeroy's Eq. Jur., Sec. 1414; 6 id. (2 Eq. Rem.) Sec. 865.) The principle is stated in Story's Equity Jurisprudence as follows: "If one party has a lien on, or interest in, two funds, for a debt, and another party has a lien on, or interest in one only of the funds, for another debt, the latter has a right in equity to compel the former to resort to the other fund, in the first instance, for satisfaction, if that course is necessary for the satisfaction of the claims of both parties, whenever it will not trench upon

the right, or operate to the prejudice of the party entitled to the double fund." (Redfield's Ed., Sec. 633.) The limitation upon the application of the principle as affecting the right of the party entitled to the double fund is stated as follows: "Relief will not be given if it will delay or inconvenience the paramount encumbrancer in the collection of his debt, or prejudice him in any manner; for it would be unreasonable that he should suffer because some one else has taken imperfect security. Thus, relief has been denied where the fund to be resorted to has been dubious, or one which might involve the creditor in litigation." (6 Pomeroy's Eq. Jur. (2 Eq. Rem.) Sec. 866.) "The principle of marshaling, inasmuch as it is based upon the necessity of equal rights between the parties, will not be enforced to the prejudice of the paramount creditor. He must not be unreasonably delayed in the collection of his debt, or inequitably deprived of any of his legal remedies. He is entitled in any event to full and prompt payment, and equity will not deprive him of his right at the instance of another creditor less fortunately situated. Consequently he will not be restrained from proceeding against either fund unless it appears that the other is amply sufficient for his debt, and he must receive full payment before the junior creditor can demand subrogation. Thus, where the paramount creditor's right to both funds is not clear and undisputed and the remedies available for reaching and applying the funds are not reasonably prompt and efficient, he will not be hindered in his election of securities; and likewise the paramount creditor will not be compelled to collect his debt from the singly charged fund where such fund is of uncertain value, and long delay will necessarily ensue in converting it into money, or where that fund consists of property in the possession of third persons who claim title thereto, while the doubly charged fund is money in court. Neither will he be confined to a fund of such a character that he is unwilling to accept the hazard of obtaining payment therefrom. And in fine the paramount creditor

will not be confined to the singly charged security where its value is dubious or can be realized only by litigation." (19 Am. & Eng. Ency. Law, 1264, 1265.)

To say that mere delay, as where foreclosure may be necessary, unaccompanied by any other injury, requires a denial of the relief places too strict a limitation, we think, upon the application of the general principle. In a Wisconsin case, where this question was considered, the court say: "It is true that delay to the prior creditor has been sometimes spoken of as a bar to the relief here asked, but we are not ready to subscribe to the doctrine that mere delay is sufficient to compel the court to deny the relief where no other injury is involved. Some delay is a necessary consequence of the enforcement of all rights, and, if a possible delay would defeat the right of a junior creditor to have the assets of his debtor marshaled, such marshaling would rarely, if ever, take place. The true rule, we think, is well expressed in Evertson v. Booth, 19 Johns. 486, where it is said that the relief will not be given if it will endanger thereby the prior creditor, or in the least impair his prior right to raise his debt out of both funds; and it is further said that there is 'no principle in equity which can take from him any part of his security until he is completely satisfied'." (Gotzian v. Shakman, 89 Wis. 52.)

The case is not here upon a judgment ultimately determining the rights of the parties, nor are we informed by the record before us whether anything more has occurred in the case than the granting of the temporary injunction, and the denial of the motion for its dissolution. Whether a temporary injunction shall be granted, or having been granted, whether it shall be dissolved, are matters resting in the sound discretion of the court; and an appellate tribunal will not interfere with or control the action of the court below therein, unless it appears that there has been a clear abuse of discretion. (Collins v. Stanley, 15 Wyo. 282, 88 Pac. 620, 123 Am. St. Rep. 1022; Anderson v. Englehart (Wyo.), 108 Pac. 977.) In Collins v. Stanley,

*supra,* ·this court said: "This discretion should be exercised ·so as to prevent injury, having in mind the situation of the parties. The rights of the defendants are protected by ·the bond, while there is no such protection afforded ˌplaintiff if the injunction. is dissolved, and it should turn out that his action is well founded." Although the petition prays that the injunction may be made perpetual on final hearing, that is not the principal relief sought in the case. It was clearly applied for and granted for the purpose of maintaining the securities in the same condition as at the commencement of the suit until the respective rights of the parties as to marshaling might be determined, and the injury to the parties enjoined incidental to the delay caused by the injunction is supposed to be provided against by the statutory bond. The question as to the right to the relief sought in relation to the securities held by the defendant Stowe is now here, therefore, only so far as it bears upon the propriety of granting and continuing the temporary injunction.

It is contended by counsel for the defendants Stowe and Alston, the plaintiffs in error here, that the petition is insufficient to show a right to the relief, and therefore insufficient as a basis for the injunction, for the reason that it fails to show that the plaintiff had tendered to Stowe all the money due him from Worland and that Stowe had declined to turn over his securities to the plaintiff; and that the fact, as shown by the affidavits filed in support of the motion to dissolve, that plaintiff had refused to pay Stowe's debt and accept his securities bars the right of plaintiff to any relief as to the order of enforcing those securities. It is true, that, upon a familiar equitable principle, the plaintiff might pay off the prior debt of Stowe and be thereby subrogated to his rights. And under some circumstances it may doubtless be equitable to require. the party holding a junior lien upon only a portion of the property covered by the senior lien to pursue that course. But we do not understand it to be the law that the second encumbrancer

must in all cases offer to pay off the debt of the first and take the latter's securities to entitle him to demand that the latter resort in the first instance to the singly charged fund or property, or that he is barred of the right to make such demand by declining an offer of the securities upon his payment of the debt. To hold that to be the absolute rule under all circumstances would, in effect, deny any other relief than subrogation, at least whenever the prior lienor is willing to turn over his securities to the party having a lien upon only a part of the property, upon being paid the entire amount due him from the common debtor. Such a rule might in many cases work great injustice. The party has two remedies, either subrogation or marshaling securities. In the case of First National Bank of Rock Springs v. Roder, 114 Fed. 451, Sanborn, Circuit Judge, says: "The rule on which the claim of the appellee is founded here is nothing but a corollary of the equitable principle of subrogation, of the general principle of equity jurisprudence that the holder of an inferior lien may pay off the superior claim and be subrogated to the rights of its holder. One who has a first lien upon two funds or two pieces of property may collect his debt from one or from both of them. When another procures a second lien upon one of them, the lien of the former is not destroyed or impaired. The primary right of the latter is to redeem the property from the first lien by paying the debt it secures. When he does this he becomes substituted in equity for the holder of the first lien, and acquires the right to enforce that lien against both the funds or properties originally incumbered. In this way the holder of the junior lien may compel the exhaustion of the property covered by the first lien alone to satisfy that claim. Circuity of action is avoided, and the same result is attained, by permitting the holder of the second lien to compel the holder of the first to exhaust the property covered by that lien only, before he has recourse to that which is doubly incumbered. Thus the rule here invoked sprang up as a corollary to this principle of

subrogation. * * * The law provided a sure method by which Mrs. Roder could have availed herself of the lien upon the wool which was held by this bank. She could have paid its debt, and have been subrogated to its rights. It provided another way by which she could have secured the benefit of that lien. She might have demanded of the bank, before it permitted Murray to use the proceeds of this wool, that it should preserve and exhaust its lien upon the wool and apply all its proceeds to the payment of its claim, before it had recourse to the sheep to satisfy it."

In Story's Equity Jurisprudence it is said that the doctrine of marshaling securities seems very probably to have been derived from the subrogation of the civil law, and that "the principal difference between the Roman system and ours is, that our courts of equity arrive directly at the same result, by compelling the first creditor to resort to the fund, over which he has complete control, for satisfaction of the debt; and the Roman system substituted the second creditor to the rights of the first, by a cession thereof upon his payment of the debt." (Redfield's Ed., Secs. 635, 636.)

Conceding that strong grounds would be presented for refusing the relief asked as to the property covered by the quit claim deed, if it should appear when all the facts are before the court that the conclusions stated in the affidavits as to the effect of that deed and the probable result of an attempt to enforce the same are justified, the district court may have concluded that it was a matter more properly to be considered at the final hearing of the cause, and it is reasonable to suppose that the court acted upon that theory. We do not think that would be an abuse of discretion upon the circumstances of this case. In granting temporary relief by interlocutory injunction courts of equity do not generally anticipate the ultimate determination of the questions of right involved. "They merely recognize that a sufficient case has been made out to warrant the preservation of the property or rights in issue *in statu quo*

until a hearing upon the merits, without expressing, and indeed without having the means of forming a final opinion as to such rights." (1 High on Inj., Sec. 5.) A defendant ought not to be disturbed in the exercise of a legal right without a probability that plaintiff may finally maintain his right as against that of the defendant. (*Id.*) But all the facts even as to the quit claim deed were not before the court on the hearing of the motion to dissolve, and the Stowe mortgages cover property advertised to be sold by the foreclosure notices not included in the mortgages held by Powers, the values of which were not shown upon the hearing of the motion. The dissolution of the injunction might be most harmful to the plaintiff if he should finally establish his right to the relief, while its continuance cannot produce much injury. It delays, of course, the foreclosure sale, but should any loss be suffered by Stowe on that account he would seem to be protected as to that by the statutory bond. In view of the circumstances this court ought not to anticipate the final judgment of the district court by our action on this appeal from the order continuing the injunction, and it is to be understood that we do not intimate what the final judgment of that court should be at the final hearing.

It is contended that the petition is insufficient for failing to allege that the property mortgaged to Powers by the Worland Hotel Company is not sufficient in value to satisfy the debt due him. The allegation that the premises described in the petition are wholly insufficient in value to satisfy the claims of the plaintiff and the defendant Stowe was doubtless intended to cover this matter. The petition may be objectionable for the reason, as suggested, that it does not clearly show that the hotel property is not sufficient in itself to satisfy the debt due to Powers. We do not, however, deem it necessary to decide that question. If the objection is well taken the petition might be amended in that particular if the facts warrant it. The motion to dissolve the injunction does not specifically mention this

objection, and it does not appear that when the motion was heard any pleading had been filed by the defendants. As held in Anderson v. Englehart, *supra,* under such circumstances, the injunction ought not to be vacated without allowing the plaintiff an opportunity to amend.

We are unwilling to hold that there was an abuse of discretion or manifest error in the order complained of, and it will, therefore, be affirmed.

Beard, C. J., concurs.

Scott, J., did not sit.