# IN THE SUPREME COURT, STATE OF WYOMING

## 2026 WY 54

APRIL TERM, A.D. 2026

May 14, 2026

| | |
|---|---|
| MEGAN DEGENFELDER, in her official capacity as Wyoming Superintendent of Public Instruction; CURTIS E. MEIER, JR., in his official capacity as Wyoming State Treasurer; and STATE OF WYOMING,<br><br>Appellants<br>(Defendants),<br><br>v.<br><br>WYOMING EDUCATION ASSOCIATION, a Wyoming nonprofit membership corporation; JENY GARDNER, individually and on behalf of her minor child; CHRISTINA HUTCHISON, individually and on behalf of her minor children; KATHRYNE PENNOCK III, individually and on behalf of her minor children; KATHARINE and ZACHARY SCHNEIDER, individually and on behalf of their minor children; CHAD SHARPE and KIMBERLY LUDWIG-SHARPE, individually and on behalf of their minor child; and CHRISTINA VICKERS and BRANDON VICKERS, individually and on behalf of their minor children,<br><br>Appellee<br>(Plaintiffs). | S-25-0203 |

|  |  |
|---|---|
| NICOLETTE and TRAVIS LECK and VICTORIA HAIGHT, | |
| Appellants (Intervenor-Defendants), | |
| v. | |
| WYOMING EDUCATION ASSOCIATION, a Wyoming nonprofit membership corporation; JENY GARDNER, individually and on behalf of her minor child; CHRISTINA HUTCHISON, individually and on behalf of her minor children; KATHRYNE PENNOCK III, individually and on behalf of her minor children; KATHARINE and ZACHARY SCHNEIDER, individually and on behalf of their minor children; CHAD SHARPE and KIMBERLY LUDWIG-SHARPE, individually and on behalf of their minor child; and CHRISTINA VICKERS and BRANDON VICKERS, individually and on behalf of their minor children, | S-25-0204 |
| Appellees (Plaintiffs). | |

*Appeal from the District Court of Laramie County*
*The Honorable Peter H. Froelicher, Judge*

***Representing the State of Wyoming, Megan Degenfelder and Curt Meier:***
    Keith G. Kautz, Attorney General; Mackenzie Williams, Deputy Attorney General. Argument by Mr. Williams.

*Representing Appellee Wyoming Education Association et al.:*
Patrick E. Hacker, Gregory P. Hacker and Erin M. Kendall; Hacker, Hacker & Kendall, P.C., Cheyenne, Wyoming. Jeffrey Lupardo, National Education Association, Washington DC. Argument by Mr. Lupardo.

*Representing Leck and Haight:*
Matthew J. Micheli and Macrina M. Sharpe, Holland & Hart LLP, Cheyenne, Wyoming. Thomas M. Fisher and Bryan Cleveland, EdChoice Legal Advocates, Indianapolis, Indiana. Katrin Marquez, Institute for Justice, Miami, Florida. Argument by Mr. Fisher.

*Before BOOMGAARDEN, C.J., and GRAY, FENN, and JAROSH, JJ, and ROBINSON, DJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Chief Justice.**

[¶1]     The Steamboat Legacy Scholarship Act (the Act) allows any parent with school-aged children in Wyoming to apply for an education savings account (ESA), which provides funds to assist with paying tuition and other educational expenses if parents choose not to send their children to public school. The Wyoming Education Association (WEA) and a group of individual plaintiffs (collectively Plaintiffs) brought a facial constitutional challenge to the Act and sought a preliminary injunction preventing its implementation and operation during the lawsuit. The district court granted the preliminary injunction, finding the Act likely violates the Wyoming Constitution and Plaintiffs would suffer an irreparable injury if the State began funding ESAs under the Act. We reverse and remand.

## ISSUES

[¶2]     We restate the issues as:

1.  Do we have jurisdiction over this appeal?

2.  Did the district court abuse its discretion when it granted the preliminary injunction?

## FACTS

### The Steamboat Legacy Scholarship Act

[¶3]     In 2025, the legislature passed the Steamboat Legacy Scholarship Act. 2025 Wyo. Sess. Laws 216–20. The Act allows eligible students, upon a parent's application, to receive an "education savings account" (ESA) funded with up to $7,000 annually via quarterly payments from the Wyoming Superintendent of Public Instruction (the Superintendent). Wyo. Stat. Ann. § 21-2-903(a)–(c) (2025). ESAs are to be funded with money from the steamboat legacy scholarship program account, and cannot be funded with county, city, or school district tax revenues. *Id.* § 21-2-903(b), (d). The legislature appropriated $30 million from the general fund to fund the newly created account, 2025 Wyo. Sess. Laws 220, and the Superintendent intended to deposit money into ESAs beginning July 1, 2025. *WDE Education Savings Account 2025–26 Education Service Provider Handbook*, Wyo. Dep't of Educ., https://edu.wyoming.gov/wp-content/uploads/2025/03/ESA-Provider-Handbook.pdf (Apr. 2025).

[¶4]     Any child who "has not graduated from high school or received a high school equivalency certificate and is eligible to attend a public school" in Wyoming is eligible

1

for an ESA, Wyo. Stat. Ann. § 21-2-904(a)(i) (2025), regardless of the child's household's financial means.[1] *See id.*; § 21-2-903(a)(i). The Superintendent "shall" approve any application for an ESA by an eligible student's parent so long as funds are available and the parent follows the correct application procedures. Wyo. Stat. Ann. § 21-2-905(d) (2025). If the number of applications for a school year would exceed the amount of available funds, students receive funding on a first-come, first-served basis, except preference is given to students who received ESA funds in the preceding year or whose siblings received ESA funds in that year or the preceding year. *Id.* § 21-2-905(e).

[¶5]    To receive an ESA, the applicant's parent must agree to several conditions. § 21-2-904(b). The parent must agree to use ESA funds only for certain qualifying expenses.[2]

---

[1] Children not less than four years old but who do not yet attend public school are also eligible, but only if their household income is equal to or less than 250% of the federal poverty level. §§ 21-2-904(a)(ii); 21-2-903(a)(ii). Plaintiffs did not challenge this portion of the Act.

[2] The qualifying expenses are:

> (A) Tuition and fees at a qualified school;
>
> (B) Tutoring services provided by an individual or a tutoring facility. The tutoring services shall not be provided by an ESA student's immediate family;
>
> (C) Services contracted for and provided by a public school district, including services provided by a public charter school. Services under this subparagraph may include, without limitation, individual classes and extracurricular activities and programs;
>
> (D) Textbooks, curriculum and other instructional materials, including, but not limited to, any supplemental materials or associated online instruction required by either a curriculum or an education service provider;
>
> (E) Computer hardware or other technological devices that are primarily used to help meet an ESA student's educational needs;
>
> (F) Educational software and applications;
>
> (G) School uniforms;
>
> (H) Fees for nationally standardized assessments, advanced placement examinations, examinations related to college or university admission and tuition and fees for preparatory courses for the exams;
>
> (J) Tuition and fees for summer education programs and specialized after school education programs, but not including after school childcare programs;

2

The parent must also agree the student will "receive instruction in reading, writing, mathematics, civics, including studies of the United States constitution and the constitution of the state of Wyoming, history, literature and science and is assessed on academic progress," though "[n]o parent shall be required to include any instruction that conflicts with the parent's or the ESA student's religious doctrines[.]" *Id.* § 21-2-904(b)(ii)(A). The student must take either "the statewide assessments administered pursuant to W.S. 21-2-304(a) or a nationally normed achievement exam[.]" *Id.* § 21-2-904(b)(ii)(B). If approved to receive an ESA, the parent must also certify the student is not or will not be enrolled in public school and "release[] the applicable school district from all obligations to educate the ESA student." *Id.* § 21-2-904(b)(ii)(C).

[¶6]    Only an "education service provider" may receive payments made with ESA funds. Wyo. Stat. Ann. § 21-2-907(a) (2025); *see also* Wyo. Stat. Ann. § 21-2-902(a)(iii) (2025). The Superintendent is tasked with establishing a certification process for education service providers that ensures ESA students will receive instruction in the required subject areas and take the required assessments. Wyo. Stat. Ann. § 21-2-906(a)(i), (xii) (2025). The Superintendent must also establish procedures to prohibit education service providers who intentionally misrepresent information, fail to timely refund overpayments, or routinely fail to provide students with required goods and services, from receiving future payments with ESA funds. *Id.* § 21-2-906(a)(x). However, nothing in the Act "shall be deemed to limit the independence or autonomy of an education service provider or to make the actions of an education service provider the actions of state government or public school district," and "[a]n education service provider shall not be required to alter its creed, practices, admission policy or curriculum to accept payments authorized by a parent from an ESA." § 21-2-907(b), (f).

---

(K) Tuition, fees, instructional materials and examination fees at a career or technical school;

(M) Educational services and therapies including, but not limited to, occupational, behavioral, physical, speech-language and audiology therapies;

(N) Tuition and fees at an institution of higher education;

(O) Fees for transportation paid to a fee-for-service transportation provider for the student to travel to and from an education service provider;

(P) Any other educational expense approved by the state superintendent;

(Q) Tuition and fees for nongovernmental online learning programs.

*Id.* § 21-2-904(b)(i).

[¶7] The Superintendent is required to audit at least 2% of all ESAs each year. § 21-2-906(a)(viii). The Superintendent must also investigate reports of misuse of ESA funds and prohibit future use of ESA funds upon a determination that a student or parent intentionally and substantially misused the funds. *Id.* § 21-2-906(a)(ix).

***The declaratory judgment action***

[¶8] In June 2025, Plaintiffs brought this action for declaratory and injunctive relief against the Superintendent, the Wyoming State Treasurer, and the State (collectively the State). WEA describes itself as "a nonprofit membership corporation in the state of Wyoming" with "approximately 5,000 members [who] work as educators and educational support personnel in Wyoming public schools, and have unique and direct knowledge, insight, and commitment when it comes to providing quality education for all Wyoming school children." Its members are also taxpayers, and many of them have children who attend public schools in Wyoming. WEA has existed for over 100 years and has regularly appeared before Wyoming courts and agencies in pursuit of its mission "to further public education and the education profession in Wyoming."

[¶9] The individual plaintiffs are all Wyoming citizens and taxpayers. Each of them has at least one child who attends public school. Several of them have children who have individualized education plans under the federal Individuals with Disabilities Education Act or a "504 plan" under 29 U.S.C. § 794. Several of them also have children who identify as queer, non-binary, or transgender. Many of them work in public schools either as educators or support personnel. Each of the individual plaintiffs voluntarily send their children to public school and believe the Act will harm their children because "private schools receiving voucher funding can refuse admission to children with disabilities like plaintiffs' children and are not required to provide special education services or comply with [individualized education plans]." Further, the individual plaintiffs "are unaware of any private school in their area which would admit their children, let alone one that would provide the range of different special services and support their children require."

[¶10] Plaintiffs sought a declaration that the Act is unconstitutional and an injunction preventing its enforcement. They claimed the Act violates the State's educational obligations contained in Article 7 of the Wyoming Constitution. They also claimed it violates Article 3, § 36's prohibition on private appropriations and Article 16, § 6(a)(i)'s prohibition on state loans, donations, or aid except for the necessary support of the poor. They sought a preliminary injunction preventing operation of the Act while the lawsuit proceeded. They argued they were likely to succeed in their claims that the Act is unconstitutional, and they had and would continue to suffer irreparable injury if the Act was fully implemented.

4

[¶11]   Some parents of prospective ESA students (Intervenors) moved to intervene in the lawsuit to defend the Act's constitutionality. Along with their motion to intervene, they filed a proposed answer to Plaintiff's complaint and a response to Plaintiff's motion for a preliminary injunction. The district court granted the motion to intervene because Wyo. Stat. Ann. § 21-2-909(c) provides, "[i]f any part of this act is challenged in a state court as violating either the state or federal constitutions, parents of eligible students and parents of ESA students shall be permitted to intervene in any lawsuit for the purposes of defending the ESA program's constitutionality." The State also responded to the preliminary injunction motion.

### *The district court's ruling*

[¶12]   After a non-evidentiary hearing, the district court entered a written order granting Plaintiffs' motion for a preliminary injunction. The court prohibited the Superintendent and other State employees from distributing funds "to or on behalf of scholarship program participants, scholarship recipients, or education service providers under the Act." It allowed the State to continue paying employees and contractors for the purpose of administering the Act, and to otherwise continue the "administrative functions" of the Act. The court did not require Plaintiffs to deposit a security for the preliminary injunction "because no party has an existing perfected right to funding under the Act. No applications have been approved, no ESA accounts have been created, and no payments to certified providers have been authorized by the State Superintendent."

[¶13]   In granting the preliminary injunction, the district court determined Plaintiffs were likely to succeed in their claims that the Act violates the Wyoming Constitution. The court reasoned Article 3, § 36's ban on "appropriations" to entities "not under the absolute control of the state" applied to an appropriation's use or purpose as opposed to its initial recipient. The court relied on dictionary definitions and further reasoned a contrary interpretation would render the provision meaningless since the legislature could easily circumvent it with a nominal transfer to a state actor. The district court also determined Plaintiffs were likely to succeed in showing the Act violates their fundamental right to education. It reasoned strict scrutiny applies to all legislative actions that affect a child's right to a proper education, and all aspects of the school financing system are subject to strict scrutiny. It found even though the Act's funding "may not come directly from the statutorily created public school Funding Model, there can be no serious dispute that the Act is an aspect of the State's system for financing schools." It also found that even assuming the State had a compelling interest, the Act was not narrowly tailored to the State's interest because education service providers were not subject to the same standards as public schools, allowing them to teach alternative curricula and discriminate against certain students.

[¶14]   The district court also found Plaintiffs would likely be irreparably injured if the Act was not enjoined. It found there would be no mechanism to recover the funds if the

5

program was later declared unconstitutional, the Act allows public funding of private schools with admissions policies that are discriminatory against the individual plaintiffs' children, the Act is inconsistent with the prioritization of public education under the Wyoming Constitution, and enjoining the Act would preserve the status quo during litigation.

[¶15] The State and Intervenors each appealed the district court's order granting the preliminary injunction. Following oral arguments, we consolidated the appeals for purposes of issuing this opinion.

## DISCUSSION

### I.    We have jurisdiction to review the district court's order granting a preliminary injunction.

[¶16] Plaintiffs argue "[a]s a threshold matter, this Court should deny [this] appeal because it does not comply with the [Wyoming Rules of Appellate Procedure]." They argue although W.R.A.P. 1.05(e)(1) includes an order granting an injunction in the definition of "appealable order," the Rule's reference to the W.R.A.P. 13 procedures for a petition for a writ of review means the district court's order is not immediately appealable. The question of whether an order is final and appealable implicates our jurisdiction and is a question of law we review de novo. *Jones v. Young*, 2024 WY 64, ¶ 7, 550 P.3d 91, 92–93 (Wyo. 2024).

[¶17] Plaintiffs' argument is inconsistent with the plain language of the Wyoming Rules of Appellate Procedure, as well as our precedent. W.R.A.P. 1.05, in relevant part, includes "[i]nterlocutory orders and decrees of the district court which . . . [g]rant, continue, or modify injunctions, or dissolve injunctions, or refuse to modify or dissolve injunctions," in the definition of "appealable order." The plain language of the rule clearly and unequivocally makes an order granting a preliminary injunction immediately appealable despite its interlocutory nature. *See McCallister v. State ex rel. Dep't of Workforce Servs., Workers' Comp. Div.*, 2019 WY 47, ¶ 22, 440 P.3d 1078, 1084 (Wyo. 2019) (we interpret statutes in accordance with their plain language and "employ essentially the same concepts when interpreting court rules.") (citing *Busch v. Horton Automatics, Inc.*, 2008 WY 140, ¶ 13, 196 P.3d 787, 790 (Wyo. 2008)). W.R.A.P. 1.05 references W.R.A.P. 13, but only for "***additional guidance*** on review of interlocutory orders." W.R.A.P. 1.05 (emphasis added). W.R.A.P. 13.02 provides a writ of review may be granted where an interlocutory order "is ***not otherwise appealable*** under these rules." (emphasis added).

[¶18] Even if the plain language of the Rules were not dispositive, our precedent makes clear that orders granting preliminary injunctions are immediately appealable. *See, e.g.*, *Malave v. W. Wyo. Beverages, Inc.*, 2022 WY 14, 503 P.3d 36 (Wyo. 2022); *Brown v.*

*Best Home Health and Hospice, LLC*, 2021 WY 83, 491 P.3d 1021 (Wyo. 2021); *cf. Hale v. City of Laramie*, 2025 WY 133, 580 P.3d 516 (Wyo. 2025) (reviewing an order denying a motion to dissolve or modify an injunction). We have jurisdiction over this appeal.

### II. *The district court abused its discretion when it granted Plaintiffs' motion for a preliminary injunction.*

[¶19]   An injunction, whether preliminary or permanent, is authorized by statute. Wyo. Stat. Ann. § 1-28-102 (2025). By its nature, however, it remains a form of equitable relief. *Brown*, 2021 WY 83, ¶ 8, 491 P.3d at 1026 (citing *CBM Geosolutions, Inc. v. Gas Sensing Technology Corp.*, 2009 WY 113, ¶ 10, 215 P.3d 1054, 1058 (Wyo. 2009)). We therefore review an order granting a preliminary injunction for an abuse of discretion. *Brown*, 2021 WY 83, ¶ 8 491 P.3d at 1026. We review a district court's legal conclusions de novo.[3] *Id.*, ¶ 9, 491 P.3d at 1026–27 (citing *Hart v. Nat'l Collegiate Athletic Ass'n*, 550 S.E.2d 79, 83 (W. Va. 2001)).

[¶20]   We have explained the purpose and requirements for preliminary injunctions:

> The purpose of a preliminary injunction during the pendency of litigation is to preserve the status quo[4] until the merits of an action can be determined. A preliminary injunction rests upon an alleged existence of an emergency, or a special reason for such an order, before the case can be regularly heard. The award of a preliminary injunction is an extraordinary remedy which will not be granted except upon a clear showing of probable success on the merits of the suit and possible irreparable injury to the plaintiff, lest the proper freedom of action of the defendant be circumscribed when no wrong has been committed.

*Brown*, 2021 WY 83, ¶ 7, 491 P.3d at 1026 (citation modified).

---

[3] If a district court makes factual findings when granting a preliminary injunction, we review those for clear error. *Id.*, ¶ 9, 491 P.3d at 1026–27 (citing *Hart v. Nat'l Collegiate Athletic Ass'n*, 550 S.E.2d 79, 83 (W. Va. 2001)). In this case, however, the relevant facts are largely undisputed, and the question is whether those facts entitle Plaintiffs to a preliminary injunction.

[4] The State argued below that "[t]he current status quo is that the ESA program is enacted and effective law. Plaintiffs seek to change the status quo by enjoining it." The district court concluded enjoining the Act would maintain the status quo because the Superintendent had not yet distributed ESA funds. Intervenors argue the definition of "status quo" in the context of a challenge to legislation is inherently subject to these opposing interpretations, and as a result, what constitutes the status quo is of limited relevance. Because Plaintiffs have not met the specific requirements for a preliminary injunction, we need not resolve this question.

7

[¶21]  The federal standard is somewhat different. Under that standard, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20, 129 S.Ct. 365, 374, 172 L.Ed.2d 249 (2008). We have declined to expressly adopt or reject the federal standard. *Brown*, 2021 WY 83, ¶¶ 34–35, 491 P.3d at 1032.

[¶22]  Plaintiffs and Intervenors nevertheless dispute whether a balance of the equities weighs in favor of granting an injunction. Plaintiffs additionally argue significant public interests weigh in favor of granting the preliminary injunction. These arguments obviously incorporate portions of the federal standard not found in our cases. Because the established Wyoming requirements (possible irreparable injury and probable success on the merits) control here, we do not further consider these arguments.[5] *Brown*, 2021 WY 83, ¶ 7, 491 P.3d at 1026.

[¶23]  Under Wyoming law, Plaintiffs had to show: 1) they might be irreparably injured if the Superintendent distributed funds under the Act; and 2) they were likely to succeed in their claim that the Act violates the Wyoming Constitution. *See Brown*, 2021 WY 83, ¶ 7, 491 P.3d at 1026. We address those requirements in turn.

### A.     Possible irreparable injury

[¶24]  To obtain a preliminary injunction, Plaintiffs had to show they might suffer irreparable injury if the district court did not enjoin the Act. *See Brown*, 2021 WY 83, ¶ 7, 491 P.3d at 1026. We first address the parties' constitutional and evidentiary arguments and then analyze whether the harm Plaintiffs alleged is sufficiently personal and particular.

#### 1.     Constitutional and evidentiary implications

[¶25]  Plaintiffs first argue it is enough to allege an injury of constitutional magnitude. They cite federal authority for the proposition that "constitutional violations constitute per se irreparable harm."

---

[5] Federal authority remains persuasive with respect to the shared elements of both tests. *See Croy v. State*, 2023 WY 124, ¶ 17, 540 P.3d 217, 223 (Wyo. 2023) ("[W]e can look to federal precedent interpreting similar rules as persuasive authority.") (quoting *Adams v. State*, 2023 WY 85, ¶ 21, 534 P.3d 469, 476 (Wyo. 2023)).

[¶26] Federal courts occasionally have presumed plaintiffs would suffer irreparable harm where they have alleged a constitutional violation, but only in free speech or religious rights cases. *Nat'l Assoc. for Gun Rights v. Lamont*, 153 F.4th 213, 248 (2d Cir. 2025) ("To be sure, we have presumed irreparable harm for alleged deprivations of certain constitutional rights. But the Supreme Court has never applied this presumption outside the First Amendment context.") (citations omitted); 11A Wright & Miller, Federal Practice and Procedure: Civil § 2948.1 (3d ed. Apr. 2026 Update) ("An exception is that when there is an alleged deprivation of a constitutional right to free speech or freedom of religion, many courts find that no further showing of irreparable injury is necessary. This principle has not (for the most part) and ought not be extended beyond the first amendment context.") (footnotes omitted).

[¶27] Plaintiffs rely on *Fish v. Kobach*, where the Tenth Circuit stated "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." 840 F.3d 710, 752 (10th Cir. 2016) (quoting *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001). In the very next sentence, however, the court recognized it "***must nonetheless engage in our traditional equitable inquiry as to the presence of irreparable harm*** . . . remain[ing] cognizant that the violation of a constitutional right must weigh heavily in that analysis." *Fish*, 840 F.3d at 752 (emphasis added).

[¶28] The great weight of authority still requires a plaintiff to allege a constitutional violation that is personal and particularized. *See, e.g.*, *DM Trans, LLC v. Scott*, 38 F.4th 608, 617 (7th Cir. 2022) ("A finding of irreparable harm ***to the moving party***, if the injunction is denied, is 'a threshold requirement for granting a preliminary injunction.'") (emphasis added) (quoting *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021)); 43A C.J.S. *Injunctions* § 68 (Apr. 2026 Update) ("Thus, an injunction is granted only when required to avoid immediate and irreparable damage to a legally recognized right, such as property rights, contract rights, or constitutional rights.") (footnotes omitted). Constitutional heft, alone, is not enough. Plaintiffs seeking injunctive relief must also show how their constitutional rights might be injured by the action they seek to enjoin.

[¶29] Plaintiffs next argue injury is inherent in the constitutional violations they allege because they brought a facial challenge to the Act. We recently explained a facial challenge is "a challenge to the terms of the statute, not hypothetical applications." *State v. Johnson*, 2026 WY 1, ¶ 22, 582 P.3d 380, 393 (Wyo. 2026) (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012)). The law remains that a plaintiff may not enjoin the operation of a statute absent a showing of how its terms will impact the plaintiff's own rights.

[¶30] The State characterizes Plaintiffs' irreparable harm showing as an evidentiary failure. It argues the district court erred in granting an injunction where Plaintiffs did not

9

present any evidence except a single affidavit that essentially parroted the facts alleged in their preliminary injunction motion. We have affirmed a preliminary injunction on "limited evidence," *CBM Geosolutions, Inc.*, 2009 WY 113, ¶ 13, 215 P.3d at 1060; however, we have never expressly defined the form or weight of evidence necessary to support a preliminary injunction request. We decline to do so here because, as shown below, the injury Plaintiffs allege is not personal and particularized.

### 2. Personal and particularized injury

[¶31] The district court found several reasons for concluding Plaintiffs had demonstrated possible irreparable injury. First, it found if funds were disbursed to parents and later paid to education service providers, there would be no mechanism to recover the funds if the Act was later found unconstitutional. Second, it found the Act "allows public funding of private schools that have discriminatory admissions policies" and the individual plaintiffs' children "will not be permitted equal access to the ESA program" as a result. Third, it found although the Act is funded by money from the State's general fund and does not impact the school funding model, "appropriating $30 million for private schooling of Wyoming students is inconsistent with the undisputed doctrine that its paramount priority is to support 'an opportunity for a complete, proper, quality education' and any competing priorities that are not of constitutional magnitude are secondary." (quoting *State v. Campbell Cnty. Sch. Dist. (Campbell II)*, 2001 WY 19, ¶ 51, 19 P.3d 518, 538 (Wyo. 2001)).

[¶32] The district court's first finding focuses on irreparability but says little about a possible injury Plaintiffs might suffer. As discussed above, Plaintiffs were required to show not only that the action they challenged would be irreparable (i.e., that it would be impossible or difficult to undo), but that it could cause them to personally suffer injury. *See DM Trans, LLC v. Scott*, 38 F.4th at 617. The district court's finding that the funds could not be clawed back does not take the necessary next step to explain how the allegedly irreversible act might impair Plaintiffs' rights or otherwise injure Plaintiffs.

[¶33] The district court's second finding, that the Act funds private schools with allegedly discriminatory policies, similarly does not rest on a possible personal injury to the individual plaintiffs or the WEA. Although that finding was specific in contemplating how discriminatory admissions policies might apply to some of the individual plaintiffs' children, it failed to acknowledge the individual plaintiffs' denial of any intent to use the ESA program.

[¶34] A paragraph from Plaintiffs' complaint illustrates this point:

> [The individual plaintiffs] ***choose to send their children to public school*** for reasons that include the benefit and support that their children's 504 plans provides, as well

10

as for the educational opportunity that [their] children can receive through an established, quality curriculum; certified teachers and other professionals; and public accountability. These [individual] plaintiffs oppose the Voucher Program due to the harmful impact it will have on their children. The Voucher Program will harm **students _like_ plaintiffs' children** because private schools receiving voucher funding can refuse admission to children with disabilities like [the individual] plaintiffs' children and are not required to provide special education services or comply with [individualized education plans]. These [individual] plaintiffs are unaware of any private school in their area which would admit their children, let alone one that would provide the range of different special services and support their children require.

(emphasis added). At oral argument, Plaintiffs' counsel acknowledged it would be speculative, based on Plaintiffs' allegations, to say the individual plaintiffs had any interest in participation in the ESA program. The individual plaintiffs have not removed their children from the public school system and do not intend to do so. There is no indication in the record that they would remove their children from public school but have not done so because of the admissions policies of certain private schools. Their claim of possible irreparable injury rests on the existence of policies they have not and do not intend to encounter. This does not satisfy the individual plaintiffs' obligation to make a clear showing of how they might personally be injured. *See Brown*, 2021 WY 83, ¶ 7, 491 P.3d at 1026.

[¶35]  Turning to the collective injury of the WEA and individual plaintiffs, the district court addressed the collective nature of the claimed injury by noting the right to education under the Wyoming Constitution is "expansive" and exists for the benefit of all Wyoming citizens. The district court and Plaintiffs emphasize the fundamental right to education, something the Wyoming Constitution clearly provides. *Campbell II*, 2001 WY 19, ¶ 42, 19 P.3d at 535 ("[E]ducation is a fundamental right."). Neither Plaintiffs nor the district court explain how the Act affects that right.

[¶36]  The district court relied on our decision in *Director of Office of State Lands & Investments v. Merbanco, Inc.*, where we found WEA and parents of school-aged children had standing to challenge the sale of state school lands without a public auction. 2003 WY 73, ¶¶ 15–23, 70 P.3d 241, 248–49 (Wyo. 2003). There, we found WEA and the parents had an interest in the money generated by school lands because it directly affected the money available to the permanent school fund. *Id.*, ¶¶ 16–18, 70 P.3d at 248. This case is different. The funds for ESAs come from the general fund and do not affect the school funding model or the permanent school fund. *See* 2025 Wyo. Sess. Laws 220.

11

[¶37] This brings us to the district court's third finding: that regardless of where the funds come from, funding any educational initiative outside the public school system is inconsistent with the legislature's constitutional duty to provide high-quality public education. The district court observed our holding in *Campbell II* that "[s]upporting an opportunity for a complete, proper, quality education is the legislature's paramount priority; competing priorities not of constitutional magnitude are secondary, and the legislature may not yield to them until constitutionally sufficient provision is made for elementary and secondary education." 2001 WY 19, ¶ 51, 19 P.3d at 539 (quoting *Campbell Cnty. Sch. Dist. v. State* (*Campbell I*), 907 P.2d 1238, 1279 (Wyo. 1995)). However, this case arises in a different context; it is not a school funding case. There are no allegations that funding the Act somehow constitutionally compromises public school funding. In other words, there is no possible injury to Plaintiffs simply because the legislature could have spent this money on public schools—the same could be said of any legislative appropriation that does not go toward public education.[6]

[¶38] We conclude Plaintiffs did not clearly show they would suffer possible irreparable injury without an injunction preventing funds from being placed into ESAs under the Act.

## B.    Likelihood of success on the merits

[¶39] Plaintiffs' failure to show possible irreparable harm is all that is needed to reverse the district court's preliminary injunction ruling. There are two reasons, however, to briefly address the second preliminary injunction requirement. First, at oral argument, Intervenors asked us to hold that Plaintiffs' arguments fail on the merits. We will not go that far.

> In granting temporary relief by interlocutory injunction courts of equity do not generally anticipate the ultimate determination of the questions of right involved. They merely recognize that a sufficient case has been made out to warrant the preservation of the property or rights in issue *in statu quo* until a hearing upon the merits, without expressing, and indeed without having the means of forming a final opinion as to such rights.

*CBM Geosolutions, Inc.*, 2009 WY 113, ¶ 7, 215 P.3d at 1057 (quoting *Stowe v. Powers*, 116 P. 576, 581 (1911)).

---

[6] The *Campbell* decisions addressed constitutional challenges to Wyoming's public school funding system, where courts intervene only when educational funding cannot meet state educational standards or creates disparity among school districts. *Campbell Cnty. Sch. Dist. v. State*, 2008 WY 2, ¶¶ 1–3, 11–15, 181 P.3d at 49–51. The circumstances here—a general fund appropriation for a voluntary program—are materially different.

[¶40]   Second, though we form no final opinion on the merits of Plaintiffs' constitutional claims, two aspects of the district court's legal analysis warrant mention. The district court first assumed the Act is part of the Wyoming school finance system, and then relied on our statement in *Campbell II* that "all aspects of the school finance system are subject to strict scrutiny," to establish that strict scrutiny applied here. 2001 WY 19, ¶ 42, 19 P.3d at 535. There are two difficulties with this approach: 1) the Act is separately funded and access to public schools remains available to all school-aged children in Wyoming; and 2) we have declined to apply strict scrutiny to every legislative measure that may affect education. *See Campbell IV*, 2008 WY 2, ¶ 13, 181 P.3d at 50. Moreover, while the fundamental right to education is well-established, as with any other fundamental right, strict scrutiny only applies if the right is infringed. *See Johnson*, 2026 WY 1, ¶ 14, 582 P.3d at 390 ("[W]hen a law ***disproportionately affects*** more than ordinary rights, a more critical analysis is warranted.") (emphasis added) (ellipsis omitted) (quoting *Martin v. Bd. of Cnty. Comm'rs of Laramie Cnty.*, 2022 WY 21, ¶ 14, 503 P.3d 68, 73 (Wyo. 2022)). As discussed above, Plaintiffs have failed to allege, and the district court failed to explain, how the Act infringes on their right to education.

[¶41]   The district court also concluded Plaintiffs could likely show the Act violates Article 3, § 36 of the Wyoming Constitution, which provides that "[n]o appropriation shall be made for charitable, industrial, educational or benevolent purposes to any person, corporation or community not under the absolute control of the state, nor to any denominational or sectarian institution or association." The district court interpreted the phrase "to any person, corporation, or community not under the absolute control of the state" as referring to the ultimate use or purpose of the funds rather than the immediate recipient of the appropriation. There is no dispute the Act appropriates money to the steamboat legacy scholarship program account, which is under the direct control of the Superintendent. Without demonstrating how this language is ambiguous, and absent any dispute that the Act appropriates money to the steamboat legacy scholarship program account controlled by the Superintendent, we question the court's authority to venture beyond Art 3, § 36's plain language. When interpreting the Wyoming Constitution, "we look first to the plain and unambiguous language used in the text . . . . If the language is plain and unambiguous, there is no room left for construction." *Gordon v. State by and through Capitol Bldg. Rehab.*, 2018 WY 32, ¶ 30, 413 P.3d 1093, 1103 (Wyo. 2018) *overruled on other grounds by Johnson*, 2026 WY 1, 582 P.3d 380.

## *CONCLUSION*

[¶42]   A preliminary injunction "is an extraordinary remedy which will not be granted except upon a clear showing of probable success on the merits of the suit and possible irreparable injury to the plaintiff, lest the proper freedom of action of the defendant be circumscribed when no wrong has been committed." *Brown*, 2021 WY 83, ¶ 7, 491 P.3d at 1026 (citation modified). Plaintiffs failed to clearly show they might be irreparably and

personally injured absent an injunction. The district court therefore abused its discretion in granting the preliminary injunction. We reverse and remand for further proceedings consistent with this opinion.